**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

John R. Beardmore,
Kathrine A. Beardmore,
and Terry Hedstrom,

Civil No. 01-948 (DWF/SRN)

Plaintiffs,

**MEMORANDUM OPINION AND ORDER**

v.

American Summit Financial Holdings, LLC;
Duckson, Carlson, Bassinger & Mitchell, LLC,

Defendants/
Third-Party Plaintiffs,

v.

Superior Financial Holding Corporation; Briggs & Morgan, P.A.; Tantalon Group Inc.; Thomas P. Kell; Todd R. Haugan; and Richard Lefcowitz,

Third-Party Defendants.

---

Timothy R. Thornton, Esq. and Jack Y. Perry, Esq., Briggs & Morgan, 2400 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402, appeared on behalf of Plaintiffs and Third-Party Defendant Briggs & Morgan.

Scott R. Carlson, Esq. and Christine Middleton, Esq., Duckson, Carlson, Bassinger & Mitchell, 333 7th Street South, Suite 2100, Minneapolis, Minnesota 55402, appeared on behalf of Defendants/Third-Party Plaintiffs.

David L. Sasseville, Esq., Lindquist & Vennum, 4200 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402 and Todd R. Haugan, Esq., Haugan Law Office, 641 Lake Street East, Suite 204, Wayzata, Minnesota 55391, appeared on behalf of Third-Party Defendants.

---

FILED DEC 10 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on October 12, 2001, pursuant to Plaintiff John Beardmore's Motion to Dismiss or Stay the Counterclaims of Defendant Duckson, Carlson, Bassinger & Mitchell, LLC, and Third-Party Defendant Briggs & Morgan P.A.'s Motion to Dismiss the Third-Party Complaint.[1] For the reasons set forth below, both motions to dismiss are granted.

## Background

The current action revolves around the issuance of a duplicate stock certificate. However, the facts preceding its issuance are far from straightforward. On September 8, 1999, John and Kathrine Beardmore[2] purchased 3,350,000 shares of Superior Financial Holding Corporation ("Superior") common stock by executing a $2,500,000 promissory note to Founders Equity Group, Inc. ("Founders"). The Beardmore purchase represented 74.4% of Superior's outstanding shares. In order to secure the note, Beardmore pledged to Founders a security interest in 2,500,000 shares of Superior and 1,500,000 shares of Innovative Financial Systems, Inc. ("IFS"). In addition, Beardmore pledged to Founders at least one mortgage and an option to buy 250,000

---

[1] At the October 12, 2001, hearing, the parties also brought cross-motions for summary judgment. The Court will keep the motions for summary judgment under advisement for an additional 30-day period, during which the Court respectfully directs the parties to attempt to negotiate a settlement of the remaining issues in the case. The Court will address this issue further in its concluding comments of its Memorandum Opinion and Order.

[2] While both John and Kathrine Beardmore are named plaintiffs to the current action, Mrs. Beardmore apparently became involved only because she is a signatory to the note used to purchase the Superior Financial stock. Mr. Beardmore was primarily involved in the numerous transactions relating to the current action, and thus the Court will hereinafter refer to Mr. Beardmore as "Beardmore."

Superior shares at $1 per share ("the Founders Option").[3] The promissory note came due on September 8, 2000.

On September 13, 1999, Superior acquired complete ownership of the Lake Bank, N.A., a bank located in Two Harbors, Minnesota.

The Beardmore/Founders Note matured on September 8, 2000. Because the note had not been paid in full, it went into default. On October 25, 2000, Beardmore sold 1,000,000 Superior shares to the Lake Bank's 401K ESOP and Trust for $1.00 per share and concomitantly paid down the Founders note by $1,000,000. Subsequent to the sale, Superior issued to Beardmore Stock Certificate 33 ("Certificate 33") which indicated his ownership of 1,500,000 of his 2,000,000 remaining shares.[4] Beardmore delivered to Founders Certificate 33, pursuant to their pledge agreement.

When Founders notified Beardmore that it intended to sell the collateral and apply the proceeds toward the amount due on the note, Beardmore requested that the sale be postponed. By way of a letter dated February 22, 2001, Founders agreed to postpone the sale if Beardmore agreed to: (1) acknowledge the notice and amount of default on the note; (2) acknowledge the terms of the proposed sales as "commercially reasonable"; and (3) provide the names of potential purchasers for purposes of notification. The terms purported to constitute a "reasonable sale"

---

[3] In Defendant American Summit's Memorandum in Support of its Motion for Summary Judgment, it refers to a security interest in one residential mortgage for a property in Alexandria, Minnesota. (Defendant's Memorandum, p. 4.) However, in their Complaint, Plaintiffs represent that the note was secured in part by two mortgages. (Complaint, ¶ 16.) It is unclear whether the discrepancy represents merely an oversight or a dispute of fact; nevertheless, even if the parties dispute whether the note was secured by one or two mortgages, the Court does not deem such a dispute to be material.

[4] Apparently, the remaining 500,000 shares owned by Beardmore were evidenced by Certificate 20.

were: (1) the sale would occur at Founders' offices on a weekday; (2) during normal business hours; (3) open to the public; (4) and notice would be published in the "Dallas Morning News and one other paper that you request if you so request." Beardmore agreed to Founders' terms by countersigning the February 22, 2001, letter.

On February 15, 2001, prior to signing the aforementioned letter, Beardmore granted to Duckson, Carlson, Bassinger & Mitchell, LLC ("Duckson Carlson") an option to purchase his 2,000,000 Superior shares at $1.50 per share ("the Duckson Carlson Option"). On March 1, 2001, Beardmore transferred all of his IFS shares to Terry Hedstrom ("Hedstrom"), and the IFS shares were specifically encumbered by the Beardmore/Founders note and pledge. Plaintiffs maintain that Founders was aware of the IFS transfer, given the presence of a Founders principal on the board of IFS.

On April 2, 2001, American Summit Financial Holdings, LLC ("American Summit") paid to Founders $1,800,000 for the Beardmore/Founders note and its collateral and an additional $50,000 for the Founders Option. In order to perfect the security interest, Founders transferred to American Summit Certificate 33 and the IFS stock certificate.

On April 11, 2001, American Summit informed Beardmore of its intent to hold a public sale of the IFS stock on April 27, 2001, at 10:00 A.M. American Summit also placed notice of the sale in the Dallas Morning News, and Finance and Commerce in Minnesota. In addition, American Summit issued notice to those entities with a security interest in the IFS stock. Present at the sale were Beardmore's attorney, Paul Thissen; the president of IFS, Mark Smith; Terry Hedstrom; the president of American Summit, Michael McVay; a representative of Beardmore's secured creditor Alerus Financial; and an unrelated party who had seen the notice in Finance and Commerce. The IFS stock was sold to American Summit for $2,000. American Summit now

contends that the IFS transfer to Hedstrom was compelled by Beardmore's plea of guilty to a felony which jeopardized several of the company's gaming licenses. American Summit further contends that the relevant stock purchase agreement was not signed until after the public sale discussed below and provided that the total consideration was "$1.00 and other good and valid consideration." To the extent that Beardmore now claims that Hedstrom provided a $2,000,000 note for the IFS shares, American Summit maintains that Beardmore has no expectation of ever collecting on the note.

On April 24, 2001, American Summit contends that it gave notice to Beardmore that it was exercising the Founders Option for the purchase of 250,000 Superior shares. Plaintiffs dispute the validity of the exercise, pointing to the Founders Option requirement that exercise is complete only upon notice and receipt of payment. *See* Founders Option Agreement, at 1, ¶ 3(d). The Founders Option further requires that, within five days of giving notice, the optionee deliver to the optionor a check for the shares being purchased. *See id.* at 2, ¶ 3(e). Plaintiffs represent that Beardmore has yet to receive any payment from American Summit on the Founders Option; however, by way of a May 3, 2001, letter to be described below, American Summit indicated that $250,000 was ready for tender, pursuant to Beardmore's payment instructions.

With respect to the Duckson Carlson Option, American Summit contends that it acquired the option on May 3, 2001, and by letter of that same date, notified Beardmore of its exercise of the option. In the letter, American Summit calculated its payment due on 1,250,000 of the Superior shares by offsetting the amount due on the Beardmore/Founders Note. American Summit further indicated that when the remaining 750,000 shares became available, proper payment would be tendered, and all purchased shares would remain in escrow pending receipt of the requisite regulatory approval. Plaintiffs contested the exercise of the Duckson Carlson

Option, maintaining that the option had to be exercised in full, could not be exercised by offsets, and was not in compliance with controlling securities and banking regulations.

On May 2, 2001, counsel for Beardmore, Briggs & Morgan contacted Todd Duckson, a member of Duckson Carlson and counsel for American Summit and communicated that Beardmore was prepared to pay the remainder of the note in full. Counsel exchanged further voice mail messages throughout the day and into the morning of May 3. On May 3, 2001, Duckson advised Briggs & Morgan for the first time that American Summit was proposing to exercise the Duckson Carlson Option.

Concluding that American Summit had not and could not validly exercise either option at that time, Plaintiffs sent letters to American Summit on May 3 and 7, 2001, in order to schedule a time and place to pay the balance on the note. Plaintiffs maintain that American Summit refused to accept Plaintiffs' attempted payment of $1,963,211.86 on May 4 and 8, maintaining that the May 3, 2001, offset rendered the attempted payment excessive. Indeed, Plaintiffs represent that attorneys at Duckson Carlson declined to meet with members of Briggs & Morgan when counsel arrived at the Duckson Carlson offices to tender payment. American Summit contends, however, that the inclusion of a reservation of rights provision in Beardmore's May 4 and 7 payoff letters validates its refusal. The provision states in relevant part: "Beardmore is making payment of the Note under protest and hereby reserves all claims, actions, causes of action, rights and remedies they may have regarding the Note . . .." The reservation of rights provision was not included in the May 3 letter nor in the May 2 telephone communication.

Also on May 2, 2001, however, Beardmore negotiated with Thomas Kell a sale of 1,500,000 Superior Shares to three purchasers, now named as third-party defendants to the current action - 999,500 to Richard Lefcowitz, 342,605 to Tantalon Group, Inc., and 157,895

shares to Todd Haugan, all at $1.26667 per share, yielding a total of $1,900,000. Thomas Kell is the chairman of Superior and president of the Lake Bank. Kell was to be paid a commission of $300,000 for negotiating the sale of Beardmore's Superior shares. In order to complete the transfer and because American Summit still held Certificate 33, Beardmore requested that a new certificate be issued. In support of his request, Beardmore's counsel, Briggs & Morgan wrote an opinion letter to Superior, dated May 15, 2001, explaining its conclusions that the relevant law and circumstances allowed for the cancellation of Certificate 33 and the issuance of a replacement certificate. On May 14, 2001, Kell canceled Certificate 33 and issued Certificate 42, evidencing the same 1,500,000 shares of Superior. Kell also issued Certificates 43 through 45 to the purchasers of Beardmore's Superior stock.

On June 18, 2001, American Summit amended its purchase agreement with Founders to reflect the following:

> 2.02 The Beardmore Shares
> The parties recognize that 1,500,000 shares of stock in Superior Financial Holding Corporation ("the Beardmore Shares") serve as partial collateral for the Promissory Note. Notwithstanding anything herein to the contrary, it is agreed and understood that nothing herein will give American Summit the right to directly or indirectly own, control or hold the power to vote or exercise any rights of control whatsoever in the Beardmore Shares or over Superior Financial until American Summit, or its assigns, receives all required regulatory approvals, including that of the Federal Reserve Bank, necessary for any such interest therein. The parties agree that no interest in the Promissory Note or the Beardmore Shares will transfer to American Summit that would require any prior state or federal regulatory approval. The parties further agree that this intent and understanding shall be incorporated by reference into the Bill of Sale and Assignment, the Escrow Agreement, the Promissory Note and the Security Agreement entered into by and between the parties hereto dated June 2, 2001.

Prior to this amendment, Duckson Carlson received, on behalf of its client American Summit, a letter from the Federal Reserve Bank, dated April 24, 2001, the same day American Summit purported to exercise the Founders Option. The Federal Reserve Bank's letter stated in relevant

part that the Bank Holding Company Act of 1956 requires that American Summit "file a section 3(a)(1) application to become a bank holding company and obtain the Federal Reserve System's approval before it acquires the promissory note or enters into the proposed voting agreement." American Summit's application for federal approval was pending at the time of hearing.

From all this, the current action ensued. Plaintiffs filed their complaint contesting American Summit's sale of the IFS stock as "commercially unreasonable" and contending that American Summit wrongfully retained and converted Beardmore's Superior shares. By their Complaint, Plaintiffs seek declaratory relief (Count I) and allege: (1) Count II: Conversion; (2) Count III: Breach of Texas' Absolute Bar Rule; (3) Count IV and VII: Breach of Contract (against American Summit and Duckson Carlson respectively); (4) Count V: Tortious Interference with Existing and Prospective Contractual Relations; (5) Count VI: Violation of the Securities Exchange Act; and (6) Count VIII: Breach of Fiduciary Duty and Duty of Loyalty. In response, Defendant Duckson Carlson has raised numerous counterclaims against Plaintiff John Beardmore, some of which will be addressed below. And not to be left out of the mix, Defendant American Summit has brought a third-party complaint against Superior Financial; Briggs & Morgan; Tantalon Group, Inc.; Thomas P. Kell; Todd R. Haugan, and Richard Lefcowitz, alleging: (1) Count I: Illegal, Unauthorized and *Ultra Vires* Purported Cancellation of Stock Certificate No. 33; (2) Count II: Illegal, Unauthorized and *Ultra Vires* Purported Issuance of Stock Certificate No. 42; (3) Count III: Recovery of Illegal, Unauthorized and *Ultra Vires* Purported Issuance of Certificates No. 43, 44, 45; (4) Count V: Conversion; (5) Count VI: Intentional Interference with Contractual Relationship; (6) Count VII: Violation of Minn. Stat. §§ 481.07 and 481.071; and requesting (7) Count IV: Injunctive Relief.

By the motions currently before the Court, Plaintiff Beardmore seeks to dismiss certain counterclaims against him, and Briggs & Morgan seeks to dismiss the third-party complaint against it. The Court will address each motion in turn.

## Discussion

### 1. Standard of Review

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

### 2. Plaintiff John Beardmore's Motion to Dismiss or Stay the Counterclaims of Defendant Duckson, Carlson, Bassinger & Mitchell, LLC

By its Answer and Counterclaim, Defendant Duckson, Carlson, Bassinger & Mitchell, LLC ("Duckson Carlson") asserted the following counterclaims against Plaintiff John Beardmore, seeking to enforce provisions of the Investment Agreement: (1) Count I: Specific Performance of Put Option; (2) Count II: Breach of Contract, as an alternative remedy to Count I; and (3) Count III: Breach of Fiduciary Duty. Plaintiff Beardmore alleges that Defendant Duckson Carlson has brought parallel state actions comprised in part of claims overlapping the three counterclaims listed above. As a result, Plaintiff has moved the Court to abstain from

hearing the Duckson Carlson counterclaims and to either dismiss or stay the current action with respect to the relevant claims.

On January 17, 2001, Duckson Carlson brought suit in state court against the Lake Bank, N.A. ("Lake Bank") and its holding company, Superior Financial Holding Corporation ("Superior Financial"), alleging breach of an express or implied contract for legal services based on the parties' retainer agreement. ("Duckson I") Included among their counterclaims, Lake Bank and Superior Financial seek declaratory judgment from the state court finding that the Investment and Retainer Agreements are null and void. On January 19, 2001, two days after Duckson I was filed, Duckson Carlson brought suit against John R. Beardmore and Mark A. Smith, seeking to enforce the Investment Agreement between the parties. ("Duckson II") Duckson Carlson did not effect service on Mr. Beardmore in Duckson II, and as of November 26, 2001, Duckson Carlson has dismissed its claims against Mr. Beardmore. Duckson Carlson contends, therefore, that because Mr. Beardmore is not a party to either Duckson I or II, any determination by the state court with respect to the Investment Agreement will not be binding on Mr. Beardmore and thus does not preclude the pursuit of the relevant counterclaims in the instant action. The Court does not agree.

The Supreme Court has identified "a virtually unflagging obligation" of federal courts to exercise their jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 952 (8th Cir. 2001) ("[T]he existence of jurisdiction usually compels its exercise."). As such, abstention is a doctrine to be invoked only under exceptional circumstances. *Colorado River*, 424 U.S. at 813.

However, the potential for duplicative litigation has been found in some cases to present the requisite exceptional circumstance. *Prudential*, 259 F.3d at 952; *Darsie v. Avia Group Int'l, Inc.*, 36 F.3d 743, 745 (8th Cir. 1994).

The Supreme Court has identified the following factors that a federal court may consider when determining whether to abstain from hearing claims over which it otherwise has jurisdiction but which are also pending in a state court proceeding: (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) the order in which jurisdiction was obtained by the courts; (4) the source of the governing law; (5) the adequacy of the state court action to protect the rights of the parties; and (6) the relative progress of the state and federal actions. *Darsie*, 36 F.2d at 745 (citing *Colorado River*, 424 U.S. at 818 and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21-26 (1983)). In its evaluation of these factors, the Eighth Circuit cautioned that courts should carefully balance the factors against their obligation to exercise jurisdiction, while also remaining mindful and flexible in light of "the realities of the case at hand." *Id.* (quoting *Cone*, 460 U.S. at 21).

In light of the circumstances of the instant case, the Court finds that the above factors weigh in favor of abstention from Defendant Duckson Carlson's counterclaims against Plaintiff John Beardmore. First, the convenience of the federal forum is a non-issue in this case as both the state and federal courts are in the same geographic area. Second, and most importantly, to proceed with the counterclaims in this Court would unnecessarily duplicate the parallel claims already underway in Duckson I. While the Court recognizes that Mr. Beardmore is not a party to either state court action, he remains a party to the Investment Agreement at issue in Duckson I, and thus the state court's determination of the agreement's validity will inevitably impact Mr. Beardmore. If this Court were to permit Duckson Carlson to proceed with its counterclaims

against Mr. Beardmore, seeking to enforce the Investment Agreement, this Court would have to evaluate the validity of the Investment Agreement as a preliminary matter, necessarily answering the question already before the state court.

The third, fourth, and sixth factors buttress the Court's evaluation of the second factor outlined above. Both state court actions were clearly filed before the current federal action. In addition, the parties have represented that discovery in Duckson I is well underway, and as of the date of hearing, discovery with respect to the counterclaims in the federal matter has yet to commence. The state court action is set for trial on a date sometime between May 13 and June 21, 2002, while the federal action has a later trial date of September 1, 2002. Moreover, the very issues raised by the counterclaims in both the state and federal actions are governed by state contract law. As such, the federal court is certainly in no better position to evaluate the legal issues raised by Duckson Carlson's counterclaims.

Lastly, there is no showing that the state court action would not adequately serve the interests of the parties involved. As the Court previously stated, the Court recognizes that Mr. Beardmore is not a party to the state court action. However, Mr. Beardmore's absence from the state court action does not compel this Court to retain jurisdiction over the Duckson Carlson counterclaims. First, Duckson Carlson made the decision to bring its original actions in state court, and the Court sees no reason why, upon the assertion of the relevant counterclaims, Mr. Beardmore could not have been joined if he was a necessary and indispensable party, regardless of which party moved for joinder. Moreover, the very fact that Mr. Beardmore brought the current motion before this Court belies Defendant Duckson Carlson's position that somehow Mr. Beardmore's absence from the state court action renders it ineffective in serving the interests of all parties. Mr. Beardmore apparently concedes that he does not need to directly

participate in the state court action in order for his interest in the Investment Agreement to be adequately served. To the extent that Duckson Carlson is arguing that its interests may not be adequately served in the state court without the presence of Mr. Beardmore, then this Court suggests that joinder is the appropriate remedy rather than duplicative litigation as the Court is being asked to engage in here.

Accordingly, the Court finds that the *Colorado River* and *Cone* factors weigh in favor of abstention, and thus the Court declines to exercise its jurisdiction over Defendant Duckson Carlson's counterclaims against Plaintiff John Beardmore.

**3. Third-Party Defendant Briggs & Morgan P.A.'s Motion to Dismiss**

By their third-party complaint against Third-Party Defendant Briggs & Morgan, P.A., Defendants/Third-Party Plaintiffs American Summit and Duckson Carlson allege that Briggs & Morgan violated Minn. Stat. §§ 481.07 and 481.071 by its representation of Plaintiffs Beardmore and Hedstrom. Specifically, American Summit and Duckson Carlson direct the Court to a May 15, 2001, opinion letter drafted by Briggs & Morgan and sent to Superior Financial Holding Corporation, for the alleged purpose of "inducing Kell to cancel stock certificate number 33 and issue Certificate 42 to Beardmore." The opinion letter states in relevant part that:

> 1. Beardmore should be entitled to claim that the Stock Certificate has been wrongfully taken by American Summit; and
>
> 2. Superior Financial should be required to cancel the Stock Certificate, and to issue and deliver the New Certificate to Beardmore.
>
> Our legal opinion is limited to Sections 1 and 2 of the previous paragraph. Such opinion is given as of the date of this letter, is limited to the internal laws of the United States of America and the State of Minnesota, and is not to be relied upon by any person or entity except Superior Financial Holding Corporation. Such opinion constitutes an expression of our judgment regarding specific matters of law, and is not an opinion regarding any matters of fact or a guarantee. Superior Financial and its agents, attorneys and employees shall not give this letter or a

> copy of this letter to any other person or entity without the prior written consent of Briggs & Morgan, P.A. This opinion is limited to the matters expressly set forth in Sections 1 and 2 of the previous paragraph, and no other opinions should be inferred.

Briggs & Morgan contends, however, that the opinion letter, sent during the course of the aforedescribed controversy over Stock Certificate No. 33, was merely intended to provide a legal opinion that its client, Mr. Beardmore, was entitled to a replacement stock certificate, based on the firm's interpretation of Minn. Stat. § 336.8-405(a) and Tex. Bus. & Com. Code § 8.405(a), two statutes the firm contends should have controlled the parties' actions under the circumstances.

American Summit and Duckson Carlson invoke Minn. Stat. §§ 481.07 and 481.071 to bring the following claim against Briggs & Morgan:

> By aiding, abetting, counseling, facilitating, orchestrating, directing and participating in the breaches of fiduciary duty and the illegal ultra vires acts alleged herein, and in subsequently bringing this action to ask a federal court to condone such acts, Briggs and Morgan, P.A., has colluded with the Third-Party Defendants herein and as such has violated Minn. Stat. §§ 481.07 and 481.071.

Minn. Stat. § 481.07 states in relevant part that: "An attorney who, with intent to deceive a court or a party to an action or judicial proceeding, is guilty of or consents to any deceit or collusion, shall be guilty of a misdemeanor; and, in addition to the punishment prescribed therefor, the attorney shall be liable to the party injured in treble damages." Minn. Stat. § 481.071 states in relevant part that: "Every attorney or counselor at law who shall be guilty of any deceit or collusion, or shall consent thereto, with intent to deceive the court or any party, or who shall delay the attorney's client's suit with a view to the attorney's own gain, shall be guilty of a misdemeanor and, in addition to the punishment prescribed by law therefor, shall forfeit to the party injured treble damages, to be recovered in a civil action."

Third-Party Defendant Briggs & Morgan challenges the alleged violations by contending: (1) that the statutes do not apply because the alleged violating conduct did not occur within the context of a "judicial proceeding" and (2) that even if the statutes could be invoked, Third-Party Plaintiffs have not properly pled a claim of fraud and no facts exist which could support such an allegation if the third-party complaint were allowed to be amended. To the contrary, Third-Party Plaintiffs contend that Plaintiffs Beardmore and Hedstrom's current request for declaratory judgment validating the issuance of the replacement stock certificate also serves to seek validation of the May 15, 2001 opinion letter, thus incorporating the opinion letter into the context of the current judicial proceeding. Moreover, Third-Party Plaintiffs maintain that they sufficiently pled allegations of fraud to support their claims; but in the event the Court finds otherwise, they seek to leave to amend their third-party complaint.

The purpose of Minn Stat. §§ 481.07 and 481.071 is to deter "fraudulent [attorney] behavior intended to deceive a party to an action or proceeding before the court." *Baker v. Ploetz*, 616 N.W.2d 263, 272 (Minn. 2000). Sections 481.07 and 481.071, however, merely provide the penalty for a successful cause of action with respect to the offending attorney conduct. Therefore, in order to properly assert a claim for damages under either statute, the plaintiff must: (1) specifically allege a claim of fraud as the underlying cause of action, in compliance with Fed. R. Civ. P. 9(b); and (2) show that the offending attorney conduct occurred within the context of a judicial proceeding. *Baker*, 616 N.W. 2d at 266, 269-72. The Court finds that Third-Party Plaintiffs have failed to establish that the alleged fraudulent conduct occurred within the context of a judicial proceeding as required by statute, and thus the third-party claims are without merit.

The May 15, 2001, opinion letter was written and distributed before any action had been filed in this Court. No person or entity had yet to be named a party in the current action. On that fact alone, the Court finds that, by its May 15, 2001, opinion letter, Briggs & Morgan did not intend to deceive the Court or a party to any action or judicial proceeding because neither the Court nor any "party" had become officially involved at the time of the letter's issuance. If the Court were to accept Third-Party Plaintiffs' argument that the current request for declaratory relief somehow bootstraps the letter into the current proceedings, then the Court would essentially be broadening the scope of the relevant statutes to apply to virtually all actions and judicial proceedings because the very nature of most judicial proceedings is to determine the validity of each parties' position. The Court declines to do so and, accordingly, finds that the opinion letter was not issued within the context of an action or judicial proceeding. In addition, the Court declines leave to amend the third-party complaint to cure any alleged insufficiency with respect to the underlying claim of fraud because no change in pleading could eliminate the fatal fact that the alleged conduct did not occur within the context of a judicial proceeding.

**4. Conclusion**

As the Court stated in a footnote at the outset of its Memorandum Opinion and Order, the Court notes that the Plaintiffs and Defendant American Summit filed cross-motions for summary judgment at the same time as the motions to dismiss addressed by this Memorandum Opinion and Order. The Court will reserve judgment on the cross-motions for summary judgment for an additional 30-day period. During that time, the Court respectfully directs the parties to evaluate their positions in light of this Memorandum Opinion and Order, further developments in the case, and any other factors that may impact such determinations. It is the opinion of this Court that it would be in the best interests of the parties to negotiate a resolution of this dispute

amongst themselves. The parties likely recall the Court's comments at hearing, indicating its concern over the circumstances surrounding this case, circumstances precipitated by both attorneys and non-attorneys alike. It is beyond this Court how such a thorny dispute can continue, apparently without responsibility being accepted by any party involved, particularly when such a dispute inevitably impacts a community of patrons in Two Harbors, Minnesota, that relies upon and has the right to expect responsible management and control of one of its integral banking institutions.

Should the parties require assistance from the Court, such as the mediation services of a Magistrate Judge, the parties should not hesitate to contact the Court. Furthermore, should the parties determine that it would be helpful for purposes of settlement if the Court were to reserve judgment for more than the additional 30 days, then again the Court requests that the parties contact the Court.

For the reasons stated, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion to Dismiss or Stay the Counterclaims of Defendant Duckson, Carlson, Bassinger & Mitchell, LLC (Doc. No. 37) is **GRANTED**, and as a result, Defendant Duckson, Carlson, Bassinger & Mitchell, LLC's Counterclaims I, II, and III (Doc. No. 8) are **DISMISSED WITHOUT PREJUDICE**,

2. Third-Party Defendant Briggs & Morgan P.A.'s Motion to Dismiss (Doc. No. 23) is **GRANTED**, and as a result, Third-Party Plaintiffs' Complaint (Doc. No. 10) is **DISMISSED WITH PREJUDICE**.

Dated: December 10, 2001

DONOVAN W. FRANK
Judge of United States District Court