**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

John R. Beardmore,
Kathrine A. Beardmore,
and Terry Hedstrom,

Civil No. 01-948 (DWF/SRN)

Plaintiffs,

**MEMORANDUM OPINION AND ORDER**

v.

American Summit Financial Holdings, LLC; and Duckson, Carlson, Bassinger & Mitchell, LLC,

Defendants/
Third-Party Plaintiffs,

v.

Superior Financial Holding Corporation; Tantalon Group Inc.; Thomas P. Kell; Todd R. Haugan; and Richard Leftcowitz,

Third-Party Defendants.

---

Timothy R. Thornton, Esq., Jack Y. Perry, Esq., and Bryant Tchida, Esq., Briggs & Morgan, 2400 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402; Scott G. Knudson, Esq., Briggs & Morgan, W2200 1st National Bank Building, 332 Minnesota Street, St. Paul, MN 55101, on behalf of Plaintiffs.

Scott R. Carlson, Esq., Duckson, Carlson, Bassinger & Mitchell, 333 7th Street South, Suite 2100, Minneapolis, Minnesota 55402, and Ralph V. Mitchell, Jr., Esq, Lapp, Libra, Thomson, Stoebner & Pusch, on behalf of Defendants/Third-Party Plaintiffs.

John H. Strothman, Esq., David L. Sasseville, Esq., Christopher H. Yetka, Esq., and Robert C. Friday, Esq., Lindquist & Vennum, 4200 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402 and Todd R. Haugan, Esq., Haugan Law Office, 746 Mill Street, Wayzata, Minnesota 55391, on behalf of Third-Party Defendants.

---

FILED JUL 30 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on July 12, 2002, pursuant to motions brought by each of the parties: (1) Defendant Duckson Carlson's Motion for Preliminary Injunction; (2) Defendants American Summit Financial Holdings, LLC and Duckson Carlson's Motion for Partial Summary Judgment; (3) Plaintiffs' Motions for Partial Summary Judgment, to Deny or Dismiss American Summit's Improper and Untimely Securities Fraud Claim, to Deny or Dismiss American Summit's Improper and Untimely "Equitable Lien" Claim and to Strike Portions of the Fourth Affidavit of Scott R. Carlson and Defendants'/Third-Party Plaintiffs' Arguments Related Thereto; (4) Third-Party Defendant Superior Financial Holding Corp.'s Motion for Summary Judgment; and (5) Third-Party Defendants Tantalon Group, Inc., Thomas P. Kell, Todd R. Haugan, and Richard Leftcowitz's Motions for Summary Judgment, to Dismiss Defendants' Improper Transfer Claim, and to Strike Defendants' Improper Transfer Claim. For the reasons set forth below, the Court: (1) denies Defendant Duckson Carlson's Motion for Preliminary Injunction; (2) denies Defendants American Summit Financial Holdings, LLC's and Duckson Carlson's Motion for Partial Summary Judgment; (3) grants in part and denies in part Plaintiffs' Motions for Partial Summary Judgment; (4) grants Plaintiffs' Motion to Deny or Dismiss American Summit's Improper and Untimely Securities Fraud Claim; (5) grants Plaintiffs' Motion to Deny or Dismiss American Summit's Improper and Untimely "Equitable Lien" Claim and denies Plaintiffs' Motion to Strike Portions of the Fourth Affidavit of Scott R. Carlson and Defendants'/Third-Party Plaintiffs' Arguments Related Thereto; (6) grants Third-Party Defendant Superior Financial Holding Corp.'s Motion for Summary Judgment; and (7) denies Third-Party Defendants Tantalon Group, Inc., Thomas P. Kell, Todd R. Haugan, and Richard

Leftcowitz's Motions to Dismiss Defendants' Improper Transfer Claim and to Strike Defendants' Improper Transfer Claim and grants their motion for summary judgment.

**Background**

The Court will not repeat the complete set of facts giving rise to the current litigation as it has been thoroughly set forth in the Court's two previous Memorandum Opinions and Orders in this case. Instead, the Court will reiterate only those facts it deems necessary to discuss the merits of the motions currently before the Court, and it will do so within its discussion of the issues set forth below. However, the Court will outline those facts that have come to the Court's attention since the Court's issuance of its two previous orders and that Defendant Duckson Carlson contends give rise to its motion for preliminary injunction.

Defendant Duckson Carlson's Motion for Preliminary Injunction again arises from the contested ownership of stock in Superior Financial. Here, Duckson Carlson alleges that Superior Financial issued two stock certificates–Certificates 28 and 29–to *Duckson Carlson* on July 12, 2000. On December 18, 2000, Mary Turnquist, Senior Vice President of Lake Bank and Secretary of Superior Financial, wrote to Todd Duckson, the firm's managing partner at the time, stating:

> As per my telephone conference, I am advising Don Wallgren at McGladrey and Pullen that Superior Financial Holding Corporation stock certificate 28 representing 267,500 shares will be changed from Duckson & Carlson, LLC, to you personally to comply with the Comptroller of the Currency and Sub Chapter "S" requirements.

By letter dated that same day, Mr. Duckson replied to Superior Financial President Thomas Kell stating:

> We received a letter from Mary Turnquist informing us that she was processing the transfer of Duckson & Carlson, LLC's ("DC") shares of Superior Financial

> Holding Corporation. I'm sure the letter was written in good faith, however, we have not yet given authorization for such a transaction.

On March 12, 2001, Lake Bank sent to Todd Duckson a form seeking his consent that Superior Financial become a sub-chapter S corporation. The following day, Mr. Duckson sent a letter to Todd Haugan, stating: "I will not be able to execute the enclosed consent statement for Superior Financial Holding Corporation because Duckson, Carlson, Bassinger & Mitchell, LLC is a shareholder, not me personally." Duckson Carlson alleges that at no time did either Duckson Carlson or Todd Duckson provide consent for a sub-chapter S election. However, in March 2001, Todd Duckson received a Schedule K-I from Superior Financial, reporting $27,817 in ordinary income.

Duckson Carlson contends that Superior Financial affected an unauthorized stock transfer, knowing that a subchapter S election can only occur when a corporation has consent from all its shareholders who must be individuals (Mr. Duckson) rather than corporations (Duckson Carlson). The harm of which Duckson Carlson now complains is that Mr. Duckson now has to report and pay taxes on income that allegedly should not be attributed to him, but rather to Duckson Carlson. Moreover, Duckson Carlson maintains that Mr. Duckson is further harmed by having to include such income in the ongoing divorce proceedings with his wife. And finally, if indeed 50% of the stock is reassigned to Mr. Duckson's wife by way of the divorce proceedings, Duckson Carlson purports that the existing majority voting share in the Lake Bank will be destroyed.

Superior Financial contests Duckson Carlson's recitation of the facts on several grounds. First, Superior Financial contends that the ownership of Certificates 28 and 29 is far from clear because Duckson Carlson and Mr. Duckson have represented to Superior Financial that the stock

has been owned by at least six different persons or entities over time. Because neither Duckson Carlson nor Mr. Duckson responded to a request to clarify ownership of the stock, "Superior determined that ownership of the 300,000 shares should revert to Duckson until such time as proof was presented that the stock was owned by another person or entity." Superior Financial Holding Corp.'s Memorandum of Law in Opposition to Motion for Preliminary Injunction, p. 5. Superior Financial contends that the stock was originally issued to Mr. Duckson who also happens to be the principal shareholder in the law firm, Duckson Carlson, and that the shares were later transferred to Duckson Carlson at Mr. Duckson's request.

Second, Superior Financial explains that Mr. Duckson acted as Superior Financial's attorney of incorporation and then as its Chief Financial Officer and co-director, at the time that the Lake Bank was purchased. Superior Financial explains that the proposal that it become a sub-chapter S corporation was made by Mr. Duckson himself and was ultimately approved in October 2000. Third, Superior Financial represents that Duckson Carlson and Mr. Duckson requested the transfer of some of the shares at issue to four individuals, two of whom were clients of Mr. Duckson, one client being Michael McVay, president of Defendant American Summit.

As the parties are aware, on December 10, 2001, the Court issued a Memorandum Opinion and Order, dismissing three of Defendant Duckson Carlson's Counterclaims without prejudice and dismissing the Third-Party Complaint against Third-Party Defendant Briggs & Morgan. On April 5, 2002, the Court issued a Memorandum Opinion and Order declaring that: (1) Minn. Stat. § 336.8-405 was improperly invoked to justify the issuance of replacement Certificate 42; (2) American Summit did not properly exercise the Founders Option or the Duckson Carlson Option; and (3) Ownership of Certificate 33 should revert to Beardmore.

Because the Court declined to address Plaintiffs' Motion for Summary Judgment, finding it not properly before the Court, Plaintiffs then filed the current Motion for Partial Summary Judgment. In addition, each of the other parties has filed a motion for summary judgment and/or a motion to dismiss or strike certain claims. The majority of the arguments before the Court relate to whether the Court's previous rulings in this case dictate the dismissal or issuance of summary judgment as to the remaining claims and counter-claims.

**Discussion**

**1. Motion for Preliminary Injunction**

**a. Standard of Review**

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**b. Likelihood of Success on the Merits**

The Court need go no further than the first factor. Indeed, the Court's analysis focuses on a *prerequisite* to the merits of Duckson Carlson's claim–proper pleading. Duckson Carlson's Third-Party Complaint contains the following claims against Superior Financial: (1) Illegal

Unauthorized, and *Ultra Vires* Purported Cancellation of Stock Certificate No. 33; (2) Illegal Unauthorized, and *Ultra Vires* Issuance of Certificate No. 42; (3) Recovery of Illegal, Unauthorized , and *Ultra Vires* Issuance of Certificates No. 43, 44, and 45; (4) Injunctive Relief; (5) Intentional Interference with Contractual Relationship; and (6) Relief under Minn. Stat. § 302A.751. There is no mention of Certificates 28 or 29 within Duckson Carlson's claims nor within the allegations made in support of its claims. The dispute that Duckson Carlson seeks to address by its Motion for Preliminary Injunction is distinct from all the allegations made by any of the parties to the current action. As plead, Duckson Carlson's Third-Party Complaint could not support the claim that Duckson Carlson now attempts to make through its motion, and Duckson Carlson has failed to seek leave to amend its third-party complaint to cure this defect. Accordingly, Defendant Duckson Carlson's Motion for Preliminary Injunction is denied.

## 2. Motions for Summary Judgment

### a. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**b. Issues**

**i. In General**

Each of the respective parties has brought a motion for summary judgment to address the effect of the Court's previous orders on the remaining claims in the case. In effect, the majority of the arguments within Defendants' motion for summary judgment and their opposition to the motions of other parties require the Court to reconsider its declaratory findings set forth in its April 5, 2002, Memorandum Opinion and Order. Defendants maintain that because the current action is ongoing, such rulings are not final and can be redetermined by the Court. Even if the Court were to reconsider its rulings, however, the Court would reach the same conclusions. Accordingly, the Court's analysis of the majority of the arguments for summary judgment operates with its April 5, 2002, findings as a backdrop.

**ii. Plaintiffs' Motion for Summary Judgment**

In their Complaint against Defendants, Plaintiffs make the following causes of action: (1) Count I: Declaratory Judgment; (2) Count II: Conversion; (3) Count III: Breach of Texas' Absolute Bar Rule; (4) Count IV and VII: Breach of Contract (against American Summit and Duckson Carlson respectively); (5) Count V: Tortious Interference with Existing and Prospective

Contractual Relations; (6) Count VI: Violation of the Securities Exchange Act; and (7) Count VIII: Breach of Fiduciary Duty and Duty of Loyalty. By their motion for summary judgment, Plaintiffs seek summary judgment on most of their claims against Defendant and all of Defendants' counterclaims against them. Defendant American Summits' counterclaims include the following: (1) Count I: Illegal, Unauthorized, and *Ultra Vires* Purported Cancellation of Stock Certificate No. 33; (2) Count II: Illegal, Unauthorized, and *Ultra Vires* Issuance of Certificate No. 43; (3) Count III: Illegal, Unauthorized, and *Ultra Vires* Issuance of Certificates 43, 44, and 45; (4) Count IV: Specific Performance of Option Agreements; (5) Count V: Conversion; (6) Count VI: Breach of Contract; (7) Count VII: Foreclosure of Security Interests; (8) Count VIII: Foreclosure of Mortgage and Deed of Trust; (9) Count IX: Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder; and (10) Count X: Injunctive Relief. Defendant Duckson Carlson has one remaining counterclaim against Plaintiffs, Count IV: Breach of Fiduciary Duty.

**a. Declaratory Judgment**

By Count I of their Complaint, Plaintiffs seek declaratory judgment, stating that the DC Option is void. By their motion for summary judgment, however, Plaintiffs reconstruct their request for a declaration that the DC Option *has terminated*. While the two requests could arguably be read as distinct, the Court reads the allegations set forth in Plaintiffs' Complaint to support either characterization. Under the circumstances of this case, Plaintiffs have alleged that the DC Option is void because it had terminated. Whether the option agreement terminated on August 4, 2001, pursuant to the termination clause providing termination 180 days after execution, or on May 30, 2001, pursuant to Beardmore's May 1, 2001, written termination of the agreement, the time has passed within which the option could be properly exercised. In light of

the Court's finding in its April 5, 2002, Memorandum Opinion and Order that American Summit failed to properly exercise the DC Option, the Court finds the DC Option to have terminated and thus to be void. Nonetheless, regardless of the Court's evaluation of this issue and its ultimate order, the option has terminated and is void as a matter of law.

**b. Count II: Conversion Claim**

As the Court stated in its April 5, 2001, Memorandum Opinion and Order, in general, an improper refusal of tender by a creditor results in conversion of the collateral. 12A *Fletcher* § 5679 (Perm. Ed. 2001). While American Summit does not contest this principle, it submits that its refusal to accept Beardmore's tender was justified. However, again, as the Court previously discussed, Defendants' explanation of justified refusal relies on actions taken on May 3, 2001, one day *after* Plaintiffs first tendered payment on the note. Even to the extent that Defendants maintain that at least the Founders Option was exercised on April 24, 2001–a contention that Defendants have failed to make since their briefing in support of earlier motions in this case–the Court finds, as a matter of law, that Defendants cannot establish a good faith belief that they had properly exercised the Founders Option before the May 2, 2001, tender offer. As the Court found in its April 5, 2001, Memorandum Opinion and Order, the clear language of the Founders Option Agreement required both notice and payment to exercise the option, and American Summit failed to submit payment within five days of April 24, 2001. Accordingly, the Court finds, as a matter of law, that American Summit was not justified in refusing Plaintiffs' May 2, 2001, tender offer to pay off the note and, as such, the Court finds that American Summit converted Certificate 33.

With respect to interest on the Note, the parties agree that accrual should cease as of the date of tender. *See Bogosian v. Woloohojian*, 158 F.3d 1, 9 (1st Cir. 1998) ("Although the issue

is not litigated often, it is a general rule that interest will not accrue after a valid tender."). Accordingly, to the extent that interest on the Note must be calculated, such interest should be calculated up to May 2, 2001.

As the Court stated in its April 5, 2002, Memorandum Opinion and Order, "[o]wnership of Certificate 33 should revert to Beardmore." While not expressly provided, under U.C.C. § 9-507, a court may provide equitable relief such that a party is "ordered or restrained on appropriate terms and conditions." *See* Tex. Bus. & Com. Code Ann. § 9.507 (Vernon); Minn. Stat. § 336.9-507 (2000). Accordingly, the Court shall require that Certificate 33 be returned to Plaintiffs because it was improperly retained upon American Summit's refusal of tender. Moreover, the Court issues such relief in light of Plaintiffs' stipulation that Certificate 33 will be remitted to Superior Financial and canceled to eliminate concern of dilution of outstanding shares.

**c. Count III: Breach of Texas' Absolute Bar Rule**

Plaintiffs' claim of breach of the Texas Absolute Bar Rule is the most hotly disputed issue remaining in this case. The parties agree that Texas law governs the issue in light of the choice of law provision contained within the Note and Pledge Agreement. Under Texas law, "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." Tex. Bus. & Comm. Code Ann. § 9.504(a). The statute further provides that a secured creditor must provide an accounting for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. *Id.* § 9.504(b). In order for a creditor to recover a deficiency judgment, however, the creditor must establish that the sale of collateral was "commercially reasonable." *Greathouse v. Charter Nat'l Bank-Southwest*, 851 S.W.2d 173, 176 (Tex. 1992).

In general, the issue of whether a sale of collateral was commercially reasonable is a question of fact. Commercial reasonableness includes the provision of reasonable notice of the sale. Tex. Bus. & Comm. Code § 9.504(c). The obligation of reasonableness may not be waived by agreement; however, "parties may by agreement determine the standards by which performance of such obligations is to be measured if such standards are not manifestly unreasonable." Tex. Bus. & Com. Code § 1.102(c) & 9.501(c).

As the Court commented in its April 5, 2001, Memorandum Opinion and Order, the parties agreed, by the February 22, 2001, letter agreement, as to how the sale should proceed. While the Court found that there may be questions of fact with respect to whether notice and the amount due were reasonable, the Court also found that American Summit breached the letter agreement by holding the sale of the IFS shares in violation of the letter's sequencing requirement, a finding that Defendants fail to challenge. By breaching a provision that it agreed would serve to constitute a commercially reasonable sale, American Summit's own conduct rendered the sale commercially unreasonable. Even if the notice and amount issues were resolved in its favor, American Summit could not undo the breach caused by its decision to sell the IFS shares before the Superior shares. Accordingly, the Court finds that the sale of IFS shares was commercially unreasonable.

Because American Summit opted to foreclose on collateral rather than to keep it in satisfaction of the note or to pursue a judgment on the full amount, the Court acknowledges that American Summit's unreasonable sale and the absolute bar rule would generally preclude it from proceeding on the remaining balance on the note. However, application of the absolute bar rule is intended to address circumstances where a creditor *disposes* of collateral in an unreasonable manner and then seeks to recover despite its conduct and despite the debtor's inability to

purchase or arrange for the purchase or appraisal of the collateral. In *Tanenbaum v. Economics Lab., Inc.*, 628 S.W.2d 769, 772 (Tex. 1982), the Court reasoned that the absolute bar rule was preferable to a rebuttable presumption of the value of the collateral because it keeps the debtor from losing the notice and reasonableness protections as set forth in the UCC as adopted in Texas. Otherwise, the *Tanenbaum* court reasoned that a debtor would have to dispute the creditor on the issue of valuation of collateral after its disposal and do so without the benefit of an appraisal. *Id.* Here, however, the remaining collateral ended up in the hands of the *debtor*. To apply the absolute bar rule under the current circumstances would be wholly inequitable and would be contrary to the policy driving the usual application of the rule. Accordingly, the Court declines to do so and finds summary judgment in favor of Defendants to be appropriate to the extent that the Court declines application of the absolute bar rule.

That being said, however, because American Summit did foreclose on some of the collateral pledged, the Court cannot issue a judgment on the whole amount due on the Note. Instead, the Court will require American Summit to rebut the presumption that the value of the IFS was equivalent to the amount due on the Note. While the Court recognizes that the *Tanenbaum* court expressly rejected the use of a rebuttable presumption in favor of the absolute bar rule, the Court finds that the policy set forth in *Tanenbaum* and other absolute bar jurisdictions and the unique circumstances of this case support the Court's decision. American Summit would thus be able to recover the amount due on the Note less any damages caused by its unreasonable sale of the IFS shares. Such damages will be an issue to be determined by the ultimate trier of fact; however, the Court continues to hold the belief that this case would be better resolved by the parties themselves, and the Court's offer of assistance to reach such resolution remains open to the parties.

**d. American Summit Counterclaim Counts I, II, and III: *Ultra Vires* Cancellation and Issuance of Certificates 33, 42, 43, 44, and 45**

Plaintiffs seek to dismiss the *ultra vires* claims against them contending that Defendant American Summit had no ownership interest in any shares of Superior Financial and thus lacks standing to bring such a claim. In the alternative, Plaintiffs contend that, even if American Summit was shareholder, it has failed to bring a viable derivative action because it has failed to show that it is doing so on behalf of Superior Financial or that Superior Financial denied American Summit's request to take such action on behalf of the corporation and its shareholders. And finally, American Summit contends that even if the current action by American Summit could qualify as a proper derivative suit, then the Court lacks the authority to grant the relief requested because such relief can only be granted upon the request of a "protected purchaser" of Certificate 33, a status that American Summit cannot validly claim.

Even assuming that American Summit has standing as a pledgee to bring a derivative action, American Summit has no standing to seek relief under U.C.C. § 8-405 which provides that the issuer must honor both the original and replacement certificates should a *bona fide* purchaser of the original certificate surface, unless an overissue would result. Minn. Stat. § 336.8-210 (2000); Tex. Bus. & Com. Code Ann. § 8.210 (Vernon). The decision to issue a replacement certificate comes with the risk that the original may ultimately be found, proof of which is that an issuer is authorized to request posting of a bond to protect against such risk. Minn. Stat. § 336.8-405; Tex. Bus. & Com. Code Ann. § 8.405 (Vernon). Because American Summit failed to exercise either option effectively, it cannot establish itself a protected purchaser to seek cancellation of the certificates.

Moreover, to the extent that American Summit bases its claims on the contentions that Kell's issuance of the replacement certificate stripped American Summit of its collateral and diluted the value of the collateral, the Court further finds the *ultra vires* claims to be entirely without merit. As the Court has already explained, it is American Summit's improper refusal of tender that forfeited its security interest in the collateral, not the issuance of the replacement stock certificate. Even to the extent that the Court found the issuance to be improper, American Summit's improper refusal of tender occurred *before* the certificate was issued. And finally, in light of Beardmore's stipulation that Certificate 33 will be canceled upon its return, American Summit's claim of dilution is moot. Accordingly, American Summit's *ultra vires* claims shall be dismissed with prejudice.

**e. American Summit Counterclaim Counts IV and VI: Specific Performance and Breach of Contract**

The parties agree that American Summit's claims for specific performance and breach of contract should be dismissed in light of the Court's April 5, 2002, Memorandum Opinion and Order. As the Court found, American Summit failed to properly exercise either option, and, as such, no claim for breach of contract or request for specific performance of the contracts can stand. While American Summit contends that the claims were rendered moot, the Court finds that summary judgment on the merits in favor of Plaintiffs is appropriate.

**f. American Summit Counterclaim Count V: Conversion**

Because the Court found that American Summit improperly refused the Beardmore's' tender offer and that it thus released any security interest in the collateral, American Summit can make no claim that Beardmore's subsequent distribution of the collateral had any effect on its interest. By its own actions, American Summit had relinquished any interest it ever had in the

collateral. What interest American Summit retained with respect to the Note is an issue entirely separate from its security interest in the collateral. Because the security interest was gone, any further dispensation of the collateral by Beardmore could not amount to conversion. Accordingly, the Court finds summary judgment in favor of Plaintiffs to be appropriate.

**g. American Summit Counterclaim Counts VII and VIII: Foreclosure of the Superior Shares, Mortgage, and Deed of Trust**

The foreclosure relief that American Summit requests by Counts VII and VIII assumes again that American Summit retained an interest in the collateral securing the note. As the Court has found, American Summit relinquished any security interest in the collateral when it improperly refused Beardmore's tender. The Court need not reach whether American Summit could effectuate a foreclosure in light of the regulatory approval needed to obtain ownership of the stock because, by refusing tender, American Summit has forfeited any right it once had to foreclose on the collateral. Accordingly, the Court finds summary judgment in favor of Plaintiffs to be appropriate on American Summit's claims for foreclosure.

**h. American Summit Counterclaim Count IX: Securities Act Violations**

The securities fraud claim set forth in American Summit's counterclaim is brought under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 and is based on the effect of Beardmore's alleged misrepresentations of stock ownership on American Summit's ability to effectively exercise the Duckson Option. Within its briefing papers, however, American Summit changes its course by arguing a claim under Section 17(a) of the Securities Act of 1933 and based upon allegations of a misrepresented legal description of Arizona property pledged as collateral for the Founders Note. As the Court will discuss further below, the Court declines to

allow a party to amend its complaint or counterclaim by brief. Moreover, American Summit has failed to properly request leave to amend its counterclaim.

To the extent that American Summit maintains a claim of securities fraud as pled in its counterclaim, however, the Court finds the claim to be without merit. Because the Court has found that American Summit's conduct resulted in its failure to exercise the Duckson Option effectively, American Summit cannot sustain a claim of securities fraud based on allegations that such failure was due to the conduct of another individual. Accordingly, the Court finds summary judgment in favor of Plaintiffs to be appropriate with respect to American Summit's claim of securities fraud.

**i. American Summit Counterclaim Count X: Injunctive Relief**

Again, American Summit's request for injunctive relief rests on the assumption that it retained an interest in the collateral pledged on the Note. The Court has found and continues to find that American Summit lost any and all security interest in the collateral upon its improper refusal of tender. As such, the Court declines to issue injunctive relief as American Summit has requested, and the Court finds summary judgment in favor of Plaintiffs to be appropriate on this claim.

**j. Duckson Carlson Counterclaim Count IV: Breach of Fiduciary Duty**

Duckson Carlson's claim of breach of fiduciary duty is premised upon five contentions: (1) that Beardmore failed to give "reasonable notice" as required by the "Take Along Provision" of the Investment Agreement when he negotiated the sale of his replacement shares; (2) that Beardmore concealed his intended sale and frustrated Duckson Carlson's "reasonable expectation" of notice in violation of the Stock Purchase Agreements; (3) that Beardmore, with

the assistance of counsel, falsely represented to Kell and Superior Financial that there were no adverse claims against Certificate 33; (4) that the aforementioned representations were made with the intent of inducing the participation of Kell and Superior Financial in the conversion of Duckson Carlson's interest in Certificate 33; and (5) that Beardmore's conduct has probably resulted in the dilution of Duckson Carlson's interest in Superior Financial. In light of the Court's findings above and in previous Orders in this case, the Court finds that Duckson Carlson cannot sustain a claim for breach of fiduciary duty as pled.

The first two contentions listed above are recharacterizations of Duckson Carlson's Count III: Breach of Contract claim, which was dismissed without prejudice under the *Colorado River* abstention doctrine. However, even to the extent that they could, in part, form the basis for a distinct breach of fiduciary duty claim, the remaining allegations are without merit in light of the Court's previous findings. As the Court has stated, Certificate 33 should have reverted to the Beardmore upon his tender offer, and, thus, his subsequent dispensation of the shares was within his rights. Moreover, the "probable" result of dilution has been rendered moot by Beardmore's stipulation that Certificate 33 will be canceled upon its return.

Without these allegations, Duckson Carlson's claim rests only on the two contentions that Beardmore breached his contractual duty of notice, and the Court finds that these two allegations alone cannot support a claim for breach of fiduciary duty. The duty of "reasonable notice" of the sale of stock exists only under the Investment Agreement. "[A] transfer of shares does not require the consent of the corporation and cannot be prohibited," "except insofar as the right may be restricted by . . . agreement among shareholders or between shareholders and the corporation." 12 *Fletcher Cyc. Corp.* § 5452 (Perm. Ed. ). Any breach of that duty is a breach of a *contractual* duty, justifying a breach of contract claim, but not a breach of an independent breach of fiduciary

duty. The Court declines to allow Duckson Carlson to bootstrap an otherwise defunct breach of contract claim into an equally untenable breach of fiduciary duty claim. Accordingly, the Court finds summary judgment in favor of Plaintiffs to be appropriate on Duckson Carlson's claim for breach of fiduciary duty.

**iii. Defendants' Motion for Summary Judgment**

By their motion for summary judgment, Defendants seek to invalidate Certificates 43, 44, and 45, contending that Third-Party Defendants Leftcowitz, Kell, and Haugan are not *bona fide* purchasers because they were fully aware of the adverse claim of Duckson Carlson's unexercised option rights in the shares they purchased. Defendants seek such relief directing the Court to Minn. Stat. § 336.8-404 for guidance. However, the relief that the Court may provide under U.C.C. § 8-404 is relief that may be sought by the "true owner." 8A *Anderson on the Uniform Commercial Code* § 8-404:16 (3d rev. ed. 1996). Neither Defendant can establish that it is a true owner of Certificate 33. Indeed, in light of the Court's determination that American Summit wrongfully refused tender, Beardmore remains the true owner of Certificate 33. While he has not sought to cancel Certificates 43 through 45, he has stipulated to the cancellation of Certificate 33 upon its return. Nevertheless, neither Defendant can establish an ownership interest in the shares represented by Certificate 33 because the Duckson Option was neither exercised effectively nor does it represent anything more than a potential contract obligation. Accordingly, the Duckson Carlson Option is not an adverse claim. To the extent that Beardmore's sale of the shares could result in Defendants' inability to exercise the Duckson Carlson Option, the remedy available would be a breach of contract claim against Beardmore, not an action against the issuer and purchasers of the replacement shares. For all the reasons outlined above, the Court denies Defendants' motion for summary judgment.

### iv. Third-Party Defendants Tantalon Group, Kell, Haugan, and Leftcowitz's Motion for Summary Judgment

Third-Party Defendants' motion for summary judgment seeks to dismiss American Summit's and Duckson Carlson's claims of *ultra vires* acts, conversion, intentional interference with a contractual relationship, breach of fiduciary duty, and for injunctive relief. The Court's analysis of Plaintiffs' motion for summary judgment on the *ultra vires* acts, conversion, and breach of fiduciary duty claims and claims for injunctive relief against them applies equally as well here. Accordingly, the Court finds summary judgment in favor of Third-Party Defendants to be appropriate on Defendants/Third-Party Plaintiffs' *ultra vires*, conversion, and breach of fiduciary duty claims and claims for injunctive relief.

With respect to the claims of intentional interference with a contractual relationship, Defendants/Third-Party Plaintiffs make no response to Third-Party Defendants' motion, thus failing to meet their burden to establish a *prima facie* case. In order to establish a claim of intentional interference with a contractual relationship, a party must prove: (1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of the contract's breach; (4) absence of justification; and (5) damages caused by the breach. *Bebo v. Delander*, 632 N.W.2d 732, 738 (Minn. Ct. App. 2001); *Dagley v. Haag Engineering Co.*, 18 S.W.3d 787, 793 (Tex. Ct. App. 2000).

American Summit and Duckson Carlson's claims for intentional interference with a contractual relationship are premised upon the alleged interference with the Note, the Pledge Agreement, the Founders Option, and the Duckson Carlson Option. Because the Court has found that neither option agreement was exercised properly, Defendants/Third-Party Plaintiffs cannot establish that either option agreement was breached. With respect to the Note and Pledge

Agreement, American Summit's refusal of Beardmore's tender relinquished any interest it had in the collateral, thus rendering subsequent action by Third-Party Defendants to be immaterial to American Summit's relinquished security interest. To the extent that Beardmore still has not paid the amount due on the Note, the actions of Third-Party Defendants are irrelevant. Thus, even to the extent that Defendants/Third-Party Plaintiffs could establish breach of the Note, they cannot also establish the requisite element that Third-Party Defendants' conduct procured that breach.

And finally, to the extent that Duckson Carlson's claim of intentional interference with a contractual relationship relies on an alleged breach of the Investment Agreement, the Court also finds Defendant/Third-Party Plaintiff's claim is ripe for summary judgment. Defendant/Third-Party Plaintiff has made no attempt to set forth a *prima facie* case showing that the Third-Party Defendants were aware of the Investment Agreement and intentionally acted in such a way to procure its breach. While the Defendant/Third-Party Plaintiff has also failed to attempt to make a showing that the Investment Agreement was breached, the Court declines to make a finding on this ground in light of the dispute that was raised within the context of Duckson Carlson's breach of fiduciary duty claim against Plaintiffs. Nonetheless, Defendant/Third-Party Plaintiff Duckson Carlson's failure to establish even one of the requisite elements is fatal to its claims of intentional interference with contractual relationships.

Accordingly, the Court finds summary judgment in favor of Third-Party Defendants to be appropriate on all of Defendants/Third-Party Plaintiffs' claims against them.

### v. Third-Party Defendant Superior Financial's Motion for Summary Judgment

Third-Party Defendant Superior Financial's motion for summary judgment raises many of the same arguments already addressed in the Court's analysis above. Indeed, Defendants/Third-Party Plaintiffs' response to this motion incorporates its previous arguments with only two additions that the Court finds have no bearing on the outcome of this motion. With respect to the *ultra vires* claims, the Court finds that its reasoning outlined above in its analysis of the *ultra vires* claims against other parties applies here as well. Neither Duckson Carlson nor American Summit had any interest in Certificate 33, nor the shares it represents, once American Summit improperly refused Beardmore's tender. Consequently, the subsequent conduct by Superior Financial was of no consequence to Defendants/Third-Party Plaintiffs. Moreover, even if either Defendant/Third-Party Plaintiff could establish any interest in Superior Financial, no damage could be established from the conduct of Superior Financial in light of Beardmore's stipulation to cancel Certificate 33 upon its return. Accordingly, the Court finds summary judgment in favor of Superior Financial to be appropriate.

Based on the same reasoning, the Court finds summary judgment in favor of Superior Financial to be appropriate on the claims of conversion and intentional interference with a contractual relationship. Even in light of the Court's prior determination that replacement Certificate 42 was improperly issued, the Court finds that American Summit's antecedent and improper refusal of tender to be fatal to both claims.

With respect to Defendants/Third-Party Plaintiffs' claim for dissolution of Superior Financial under Minn. Stat. § 302A.751, the Court finds that Defendants/Third-Party Plaintiffs have failed to make a *prima facie* showing to support a claim for such relief. Section 302A.751

provides for equitable relief in an action by a shareholder that establishes "the directors or those in control of the corporation have acted in a manner unfairly prejudicial toward one or more shareholders." Minn. Stat. § 302A.751, subd. 1(b)(3). As a preliminary matter, American Summit has failed to establish that it is or ever was a shareholder of Superior Financial in order to bring an action for such relief; and, it remains far from clear as to whether Duckson Carlson is a shareholder. Nonetheless, assuming both parties could seek relief under the statute as a shareholder of Superior Financial, they have failed to show how the actions of Kell, Haugan, and Beardmore resulted in unfair prejudice against the shareholders of Superior Financial. To the extent that these claims are based on the other claims brought in this matter, *e.g.*, breach of fiduciary duty, breach of contract, and intentional interference with a contractual relationship, the Court's rulings on these claims render the current claim without merit. To the extent that Defendants/Third-Party Plaintiffs are claiming unfair prejudice to *themselves*, it is the very conduct of American Summit itself, not any other party, that has released its interest in Superior Financial. Nonetheless, the Court reiterates, once again, that a security interest and an option agreement do not constitute ownership interests in Superior Financial, and upon their release and ineffectual exercise, no interest has been otherwise established. Moreover, to the extent that Defendants/Third-Party Defendants are claiming unfair prejudice on the behalf of all shareholders of Superior Financial, no allegations remain standing that could support a showing of unfair prejudice, especially in light of Beardmore's stipulation to cancel Certificate 33 upon its return. Accordingly, the Court finds summary judgment in favor of Superior Financial to be appropriate.

### 3. Motions to Dismiss or Strike

#### a. Third-Party Defendants Tantalon Group, Kell, Haugan, and Leftcowitz's Motion to Dismiss and Strike Defendants' Improper Transfer Claim

Third-Party Defendants Tantalon Group, Kell, Haugan and Leftcowitz have moved the Court to dismiss and to strike Defendant Duckson Carlson's improper transfer claim, contending that the claim has not been properly pled and that leave should not be granted to amend the third-party complaint appropriately. Third-Party Defendants' motion relates to the claim purportedly made by way of Defendant Duckson Carlson's motion for preliminary injunction. To the extent that the motion for preliminary injunction asserts a claim, the motion is directed at the conduct of Superior Financial. In the final paragraph of the motion, however, Duckson Carlson does seek that the Court enjoin both Superior Financial and Thomas Kell from affecting any improper transfers of stock. While the Court questions whether the current motion is properly brought by Third-Party Defendants other than Superior Financial and, possibly, Kell, such uncertainty underscores the Court's determination that a claim has not been properly pled to afford the relief sought by the motion for preliminary injunction. As a result, there is no claim that the Court can dismiss in satisfaction of the current motion. Moreover, there is no motion currently before the Court seeking leave to amend Duckson Carlson's Third-Party Complaint so that such a claim may be added. Accordingly, the Court denies Third-Party Defendants' Motion to Dismiss. To the extent that Third-Party Defendants seek to strike any and all argument relating to the purported claim of improper transfer, the Court denies the motion as moot. The Court shall not consider any such arguments in its evaluation of the other motions before it.

**b. Plaintiffs' Motion to Dismiss American Summit's Improper and Untimely Securities Fraud Claim**

Plaintiffs Beardmore seek to dismiss Defendant American Summit's claim of securities fraud to the extent that it is brought under Section 17(a) of the 1933 Securities Exchange Act. In Count IX of its counterclaim, American Summit alleges "[v]iolations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 [p]romulgated [t]hereunder." Moreover, the securities fraud claim set forth in the pleadings is based on allegations that Beardmore defrauded American Summit by falsely representing in the DC Option Agreement that Beardmore would deliver the shares unencumbered upon exercise of the Option. The purported Section 17 claim that American Summit now attempts to maintain is based on allegations that Beardmore fraudulently misrepresented the legal description of Arizona property pledged as collateral for the Founders Note.

Neither Section 17 nor allegations of misrepresented collateral on the Founders Note can be found within American Summit's counterclaim. It was not until reading American Summit's Opposition to Plaintiffs' Motion for Partial Summary Judgment that the Court learned of such a claim. If such an argument was intended to be read as an assertion of a new and distinct claim of securities fraud, Defendant American Summit has failed to properly seek leave of the Court to amend its counterclaim appropriately. The Court will not sanction an end run around the Federal Rules of Civil Procedure by allowing a last minute and cavalier amendment by brief. Moreover, the Court will not consider any arguments or allegations related to this untimely claim in its consideration of the motions for summary judgment also before the Court. And again, to the extent that Plaintiffs seek to strike those portions of American Summit's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment relating to American Summit's

Section 17 securities fraud claim, the Court denies such motion as moot, but also declines to consider any such arguments in its evaluation of the remaining motions before the Court.

### c. Plaintiffs' Motion (1) To Deny or Dismiss American Summit's Improper and Untimely Equitable Lien Claim and (2) To Strike Portions of the Fourth Affidavit of Scott R. Carlson and Defendants/Third-Party Plaintiffs' Arguments Related Thereto

Plaintiffs also seek to dismiss American Summit's claim for an equitable lien and to strike any argument and portions of supporting affidavits related to such a claim. The Court views the current motion as it viewed the previous two motions to strike. American Summit failed to plead a claim requesting the relief of an equitable lien, and it has also failed to seek leave of the Court to amend its counterclaim as such. Again, the Court declines to permit any party to amend its pleadings by an impermissible and cavalier paragraph within a brief. While the Court appreciates American Summit's concern that the Beardmore's may have become judgment proof, such concern does not justify a disregard of the rules of proper pleading.

Moreover, the basis that American Summit has provided to justify its request for such relief is hearsay. While evidence of Mr. Beardmore's financial obligations could ultimately be found admissible, such information could not be submitted by way of an opposing attorney. An affidavit from any of the bank representatives would be presumptively admissible because they could likely be established to have personal knowledge of Beardmore's finances; however, American Summit has failed to present any evidence that would likely be admissible at trial. Nonetheless, the Court need not even reach the merits of American Summit's purported claim because it was not properly pled. To the extent that Plaintiffs also seek to strike argument and portions of the supporting affidavit relating to the claim for an equitable lien, the Court denies

the motion as moot and, nonetheless, shall not consider any such argument or statements in its consideration of the other motions currently before the Court.

**4. Conclusion**

The conduct of American Summit in improperly rejecting Beardmore's tender and improperly exercising the option agreements has rendered the majority of the claims in this case to be without merit. However, it bears repeating that the Court believes that the conduct of each of the parties served to make a complicated dispute all the more twisted and tangled. Because the scope of this case has been narrowed significantly, it is the Court's opinion that the remaining issues should be ripe for more successful settlement discussions between the parties. The only remaining issues to be determined are the amount due on the Note in keeping with the Court's ruling on the absolute bar rule and Counts I (some provisions) and IV through VIII of Plaintiffs' Verified Complaint. If the parties should require the assistance of the Court in reaching such resolution, the parties are respectfully directed to contact Beverly Riches, Calendar Clerk for Magistrate Judge Susan Richard Nelson at 651-848-1200 or Lowell Lindquist, Calendar Clerk for Judge Donovan W. Frank.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendant Duckson Carlson's Motion for Preliminary Injunction (Doc. No. 63) is **DENIED**;

2. Third-Party Defendant Superior Financial Holding Corp.'s Motion for Summary Judgment (Doc. No. 71) is **GRANTED** such that:

   a. Counts I-V and VII of Third-Party Plaintiff Duckson Carlson's Complaint (Doc. No. 10) are **DISMISSED WITH PREJUDICE**;

b. Counts I-VI of Third-Party Plaintiff American Summit's Complaint (Doc. No. 9) are **DISMISSED WITH PREJUDICE**;

3. Plaintiffs' Motion to Deny or Dismiss American Summit's Improper and Untimely Securities Fraud Claim (Doc. No. 74) is **GRANTED**;

4. Plaintiffs' Motion to Deny or Dismiss American Summit's Improper and Untimely "Equitable Lien" Claim (Doc. No. 83) is **GRANTED**;

5. Plaintiffs' Motion to Strike Portions of the Fourth Affidavit of Scott R. Carlson and Defendants'/Third-Party Plaintiffs' Arguments Related Thereto (Doc. No. 83) is **DENIED**;

6. Defendants American Summit Financial Holdings, LLC and Duckson Carlson's Motion for Partial Summary Judgment (Doc. No. 85) is **DENIED**;

7. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 76) is **GRANTED IN PART and DENIED IN PART**, such that:

a. Summary judgment in favor of Plaintiffs is issued on Count II of Plaintiffs' Verified Complaint (Doc. No. 1) and Defendants are respectfully directed to return Certificate 33 to Plaintiffs Beardmore;

b. The Duckson Carlson Option has terminated;

c. Summary judgment in favor of Defendants is issued on Count III of Plaintiffs' Verified Complaint (Doc. No. 1) pursuant to the reasoning and provisions set forth in the Court's Memorandum Opinion;

d. Summary judgment in favor of Plaintiffs is issued on all claims such that Counts I-X of Defendant American Summit's Counterclaim (Doc. No. 7) are **DISMISSED WITH PREJUDICE**;

e. Summary judgment is issued in favor of Plaintiffs such that Count IV of Defendant Duckson Carlson's Counterclaim (Doc. No. 8) is **DISMISSED WITH PREJUDICE**;

8. Third-Party Defendants Tantalon Group, Inc., Thomas P. Kell, Todd R. Haugan, and Richard Leftcowitz's Motion for Summary Judgment (Doc. No. 69) is **GRANTED** such that:

a. Counts I-V and VII of Third-Party Plaintiff Duckson Carlson's Complaint (Doc. No. 10) are **DISMISSED WITH PREJUDICE**;

b. Counts I-VI of Third-Party Plaintiff American Summit's Complaint (Doc. No. 9) are **DISMISSED WITH PREJUDICE**;

9. Third-Party Defendants Tantalon Group, Inc., Thomas P. Kell, Todd R. Haugan, and Richard Leftcowitz's Motion to Dismiss Defendants' Improper Transfer Claim (Doc. No. 91) is **DENIED**; and

10. Third-Party Defendants Tantalon Group, Inc., Thomas P. Kell, Todd R. Haugan, and Richard Leftcowitz's Motion to Strike Defendants' Improper Transfer Claim (Doc. No. 91) is **DENIED AS MOOT**.

Dated: July 30, 2002

DONOVAN W. FRANK
Judge of United States District Court