**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**John R. Beardmore, Katherine A. Beardmore, and Terry Hedstrom,**

**Plaintiffs,**

**v.**

**American Summit Financial Holdings, LLC and Duckson, Carlson, Bassinger & Mitchell, LLC,**

**Defendants/Third Party Plaintiffs,**

**v.**

**Thomas P. Kell, Todd R. Haugan, and Richard Lefcowitz,**

**Third-Party Defendants.**

**Civil No. 01-948 (DWF/SRN)**

**ORDER**

---

The above-entitled matter came before the undersigned United States Magistrate Judge on December 13, 2004 on Third-Party Plaintiff American Summit Financial Holdings's (American Summit's) Motion for Leave to File and Serve Amended and Supplemental Third Party Complaint (Doc. Nos. 114 and 117). (See Doc. No. 124.) This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

# I. BACKGROUND[1]

## A. Factual Background

[John and Katherine Beardmore (Beardmores)] borrowed $2.5 million from Founders Equity Group, Inc. (Founders) to purchase 3.35 million [Superior Financial Holding Corporation (Superior)] shares. The Beardmores signed a promissory note (Founders Note) and a security agreement (Security Agreement). The Security Agreement granted Founders a security interest in 2.5 million Superior shares, the Innovative Financial Systems, Inc. (IFS) shares held by the Beardmores, and at least one parcel of the Beardmores' real estate. Additionally, the Beardmores granted Founders an option (Founders Option) to purchase 250,000 Superior shares for $250,000. The Founders Note, the Security Agreement, and the Founders Option all provide Texas law governs.

The Beardmores sold one million Superior shares covered by the Security Agreement, applying the proceeds to the Founders Note. Superior issued the Beardmores a new stock certificate (Certificate 33) evidencing 1.5 million Superior shares, which the Beardmores delivered to Founders. The Beardmores also granted Duckson, Carlson, Bassinger & Mitchell, LLC an option (DC Option) to purchase two million Superior shares at $1.50 per share.

After the Beardmores defaulted on the Founders Note, Founders notified the Beardmores of its intent to foreclose on the collateral securing the Founders Note. The Beardmores requested Founders delay the foreclosure sale. In a reply letter dated February 22, 2001, Founders agreed to delay the foreclosure sale for a specific period of time, if the Beardmores agreed, inter alia, the sale procedure Founders outlined in the February 22 letter was commercially reasonable. The February 22 letter provided the sale would be commercially reasonable if Founders first sold the Superior shares and only sold the IFS shares if a deficiency existed after the sale of the Superior shares. The Beardmores agreed this sale procedure would be commercially reasonable. . . .

A week later, Founders assigned the Founders Note and Founders Option, and Founders' security interests in the Superior shares, IFS shares, and real estate to American Summit. Pursuant to the assignment, Founders transferred Certificate 33 and the IFS shares certificate to American Summit. Contrary to the sale procedure outlined in the February 22 letter, American Summit notified the Beardmores of its intent to sell publicly the Beardmores' IFS shares on April 27, 2001. American Summit then sold the IFS shares at a public sale for $2,000.

Three days before the public sale of the IFS shares, American Summit notified the Beardmores of its intent to exercise the Founders Option. Seven days after the public sale,

---

[1] Where indicated, the text of this section is taken from the December 8, 2003 decision of the Court of Appeals for the Eighth Circuit (Doc. No. 101).

> the Beardmores tendered a $2 million check to American Summit to satisfy the Founders Note. The Beardmores generated the $2 million by selling the shares evidenced by Certificate 33 to [Thomas P. Kell, Todd R. Haugan, and Richard Lefcowitz (Kell Group)]. Superior subsequently issued Certificates 43, 44, and 45 to members of the Kell Group to replace Certificate 33 and a successor replacement certificate to Certificate 33 (Certificate 42). American Summit refused the $2 million tendered check, asserting it had acquired the DC Option the day before and had exercised the DC Option by offsetting the amount outstanding under the Founders Note against the DC Option purchase price for Superior shares at $1.50 per share.

Beardmore v. Am. Summit Fin. Holdings, LLC, 351 F.3d 352, 354-55 (8th Cir. 2003) (footnote omitted).

## B. Procedural Background

### 1. District Court Decision

> The Beardmores brought a declaratory judgment action against American Summit, requesting the district court declare American Summit converted the Beardmores' Superior shares, and the Texas absolute bar rule prevented American Summit from pursuing a deficiency judgment. American Summit answered and counterclaimed, requesting that the district court allow American Summit to foreclose its security interests and declare Superior's issuance of Certificate 42 was unauthorized, illegal, and ultra vires. American Summit also filed a third-party complaint against the Kell Group, claiming, inter alia, Superior's issuance of Certificates 43, 44, and 45 was unauthorized, illegal, and ultra vires.

Id. at 355. On June 22, 2001, American Summit filed a Third-Party Complaint which named the following Third-Party Defendants: Superior, Briggs and Morgan, P.A., Tantalon Group, Inc., Thomas P. Kell, Todd R. Haugan, and Richard Lefcowitz. (Doc. No. 9.) The June 2001 Third-Party Complaint contains the following counts:

> COUNT I: ILLEGAL, UNAUTHORIZED, AND ULTRA VIRES PURPORTED CANCELLATION OF STOCK CERTIFICATE NO. 33 (Against Superior, Tantalon, Kell, Haugan, and Lefcowitz) . . .
>
> COUNT II: ILLEGAL, UNAUTHORIZED, AND ULTRA VIRES PURPORTED CANCELLATION OF STOCK CERTIFICATE NO. 42 (Against Superior, Tantalon, Kell, Haugan, and Lefcowitz)

. . . .

COUNT III: RECOVERY OF ILLEGAL, UNAUTHORIZED AND ULTRA VIRES ISSUANCE OF CERTIFICATES NO. 43, 44, 45 (Against Superior, Tantalon, Kell, Haugan, and Lefcowitz) . . . .

COUNT IV: INJUNCTIVE RELIEF (Against Superior, Tantalon, Kell, Haugan, and Lefcowitz) . . . .

COUNT V: CONVERSION (Against Superior, Tantalon, Kell, Haugan, and Lefcowitz) . . . .

COUNT VI: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP (Against Superior, Tantalon, Kell, Haugan, and Lefcowitz) . . . .

COUNT VII: RELIEF UNDER MINN. STAT. § 482.07 AND 481.071 (Against Briggs and Morgan) . . . .

(Id. at 12-19.)

On summary judgment, the district court[, the Honorable Judge Donovan W. Frank, presiding,] concluded, inter alia, (1) American Summit's sale of the IFS shares before the Superior shares violated the February 22, 2001 letter agreement and constituted a commercially unreasonable disposition, (2) American Summit converted the Beardmores' Superior shares when it rejected the Beardmores' tender of the $2 million check to satisfy the Founders Note, (3) the Texas absolute bar rule did not absolve the Beardmores from liability under the Founders Note, and (4) American Summit lacked standing to challenge the issuance of Certificates 43, 44, and 45.

Beardmore, 351 F.3d at 355.

### 2. Eighth Circuit Appeal: Issues Presented for Review

American Summit appealed the district court's decision to the United States Court of Appeals for the Eighth Circuit. (Doc. No. 99.) American Summit's one sentence Notice of Appeal reads: "Notice is hereby given that American Summit Financial Holdings, LLC, a party in the above named case, hereby appeals to the United States Courts of Appeals for the Eighth Circuit from final judgment entered in this action." (Id.) In its brief to the Eighth Circuit, American Summit listed the "issues

presented for review" as follows: (1) "Did the District Court err when it held tender effective on May 2, 2001, even though the undisputed facts establish [a] Beardmore failed to produce payment on May 2, 2001, [b] Beardmore did not have the funds to make payment on May 2, 2001, and [c] Beardmore's attorneys admit tender was first made on May 4, 2001?"; (2) "Was American Summit justified in refusing Beardmore's tender on May 4, 2001, because it reasonably believed that it had previously exercised two option agreements and satisfied the debt in payment of the options on May 3, 2001?"; (3) "Were Kell, Lefcowitz, and Haugan protected purchasers when they purchased Beardmore's stock, having had actual notice of two separate adverse claims against the stock?"; and (4) "Did the District Court err when it refused to cancel the new shares issued to Kell, Lefcowitz, and Haugan on the grounds that American Summit lacked standing?" See Eighth Circuit Brief of Appellant/Cross-Appellee American Summit in Nos. 02-3370 and 02-3371, at 1-2, available at http://www.ca8.uscourts.gov/tmp/023370.html. American Summit did not present any other issues for review to the Eighth Circuit.

In response to American Summit's appellate brief, the third-party defendants in this suit responded: "Despite filing a blanket appeal from the entire August 19, 2002 judgment below, American Summit's appellate brief is narrowly focused. American Summit's only remaining claims on appeal are its counterclaims (Counts I-III) and third-party claims (Counts I-III) challenging Superior's alleged ultra vires cancellation of Certificate 33 and issuance of Certificates 42-45 to Third-Party Defendants." See Eighth Circuit Brief of Appellees Briggs and Morgan, Tantalon Group, Thomas P. Kell, Todd R. Haugan, Richard Lefcowitz in 02-3370, at 8 (emphasis in original), available at http://www.ca8.uscourts.gov/tmp/023370.html. In its Eighth Circuit reply brief, American Summit did

not respond to Third-Party Defendants' characterization of the issues on appeal. See Eighth Circuit Reply Brief of Appellant/Cross-Appellee American Summit in Nos. 02-3370 and 02-3371, available at http://www.ca8.uscourts.gov/tmp/023370.html.

**3. Issues Addressed By and the Opinion of the Eighth Circuit**

The Eighth Circuit filed its opinion in this matter on December 8, 2003. See Beardmore, 351 F.3d at 352. In issuing its decision, the court defined the scope of its decision as follows:

> Notwithstanding the numerous issues raised by the parties, we address only the issues necessary to resolve the parties' interests in the Superior shares, the Beardmores' liability under the Founders Note, American Summit's interest in the Beardmores' real estate, and American Summit's standing to challenge the issuance of Certificates 43, 44, and 45. Resolving these issues will also resolve the parties' other concerns raised on appeal.

Id. at 355. The Eighth Circuit concluded that American Summit, acting as a secured creditor, elected to retain its collateral—"both the IFS shares and the Superior shares"— "in complete satisfaction of the Founders Note." Id. at 357. Therefore, the court held that "American Summit is the owner of the Superior shares, regardless of whether American Summit properly exercised the DC and Founders Options." Id. at 359. The court reversed the district court's order vesting ownership of Certificate 33 with the Beardmores. Id. Moreover, the court remanded "the case to the district court for entry of an order vesting the ownership of the shares evidenced by Certificate 33 in American Summit, with no deficiency." Id. Finally, the court also remanded "for the district court to reconsider American Summit's standing to assert the unauthorized, illegal and ultra vires issuance claim of Certificates 43, 44, and 45, and, if American Summit has standing, to consider the merits of American Summit's claim." Id.

**4. American Summit's Motion for Leave to File and Serve Amended and Supplemental Third Party Complaint**

On November 15, 2004, American Summit moved to amend its Third-Party Complaint pursuant to Federal Rule of Civil Procedure 15(a) and (d). (Doc. No. 117.) American Summit's proposed Amended Third-Party Complaint contains the following counts:

> COUNT I: RECOVERY OF ILLEGAL, UNAUTHORIZED AND ULTRA VIRES ISSUANCE OF CERTIFICATES NO. 43, 44, AND 45 (Against Kell, Haugan and Lefcowitz)
>
> COUNT II: CONVERSION (Against Kell, Haugan and Lefcowitz)
>
> COUNT III: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP (Against Kell, Haugan and Lefcowitz)
>
> COUNT IV: BREACH OF COMMON LAW FIDUCIARY DUTY (Against Kell, Haugan and Lefcowitz)
>
> COUNT V: OPPRESSION UNDER MINN. STAT. § 302A.751 (Against Kell, Haugan and Lefcowitz)

(Doc No. 124, Attachment 2.)[2]

A comparison of the proposed Third-Party Complaint and the Third-Party Complaint filed in 2001 yields the following findings. The proposed ultra vires claim is identical to the one in the 2001 Third-Party Complaint (Doc. No. 9 Count III). The proposed conversion claim is identical to the one in the 2001 Third-Party Complaint (Id. Count V) except that references to Beardmore and Tantalon

---

[2] The Third-Party Complaint filed with the Court on November 15, 2004 (Doc. No. 117 Ex. 1) contains only four of these five counts (Counts II-V). Counsel for Third-Party Plaintiffs submitted a revised proposed Amended and Supplemental Third-Party Complaint to this Court on the date of the motion hearing in this matter, December 13, 2004. (Doc No. 124, Attachment 2.) The operative proposed Amended Third-Party Complaint is the one submitted on December 13, 2004 which contains the five counts identified above.

have been deleted. The proposed intentional interference claim is identical to the one in the 2001 Third-Party Complaint (Id. Count VI) except that references to Beardmore and Tantalon have been deleted. In addition, American Summit also proposes to supplement the factual allegations in its Third-Amended Complaint by alleging events that occurred subsequent to the filing of the 2001 Third-Party Complaint. Based upon these new allegations, American Summit seeks to add two new counts against Third-Party Defendants in their roles as directors and/or shareholders of Superior Financial: breach of common law fiduciary duty and statutory oppression. Finally, Third-Party Plaintiffs do not propose to renew their 2001 count against Briggs and Morgan. American Summit asserts that this Court has supplemental jurisdiction over these claims based upon 28 U.S.C. § 1367. (Doc No. 124, Attachment 2 at ¶ 7.)

## II. PARTIES' POSITIONS

Third-Party Defendants object to American Summit's motion for the following reasons: (1) since Superior Financial is no longer a Bank Holding Company, no federal question jurisdiction or other federal subject matter jurisdiction exists; (2) the amendments are untimely and would be prejudicial to Third-Party Defendants; and (3) the amendments go beyond the limited remand ordered by the Eighth Circuit and essentially constitute a new and separate cause of action based upon events occurring after Judge Frank's rulings on summary judgment and after the Eighth Circuit's remand order. (Third-Party Defs.' Response at 2.)

First, Third-Party Defendants contend that "shortly after the sale of The Lake Bank" on March 10, 2004, "Superior ceased to be a bank holding company and is no longer under the jurisdiction, control, or supervision of the Federal Deposit Insurance Corporation, the Federal Reserve Bank, or the

Office of the Controller of Currency." (Id. at 3.) Therefore, argue Third-Party Defendants, "Superior is nothing more than a Minnesota business corporation, as it is no longer involved in banking activities of any nature, and is no longer under the direction of" federal agencies. (Id. at 9.) Second, Third-Party Defendants argue that many of the original parties to the underlying litigation are no longer parties, no facts have been developed in the case for well over a year, and amendment at this time would be unfairly prejudicial to them (Id. at 2). Third, Third-Party Defendants attack the specific counts proposed as follows. They contend the proposed conversion claim is barred by res judicata principles because it was adjudicated by Judge Frank in their favor and not reversed by the Eighth Circuit. (Id. at 7.) Third-Party Defendants also argue that the new claims proposed by American Summit "amount[] to an entirely different action" premised primarily "upon the fact that The Lake Bank was ultimately sold by Superior . . . at a substantial loss." (Id. at 6-7.) At the motion hearing, both parties agreed that between six to eight months of additional discovery may be required if the Court grants leave to add these new counts. Third-Party Defendants urge dismissal of the new claims without prejudice; they concede that American Summit could bring the claims in state court.

American Summit concedes that no federal question jurisdiction remains but argues that the court should retain the state law claims anyway pursuant to the Court's supplemental jurisdiction authority. Further, American Summit argues that complete adjudication of the parties' existing dispute can only occur if its motion is granted. American Summit contends that Third-Party Defendants have not argued the amendments would be futile or are proposed in bad faith and the new counts are proposed in response to new issues raised by the Eighth Circuit's remand order. In response to the argument that res judicata bars its proposed conversion claim, American Summit argued at the motion

hearing that the Eighth Circuit "in essence overruled" Judge Frank's ruling which dismissed the claim. American Summit argues its position is sound "[b]ecause the District Court's decision on the conversion issue was based on its ruling—now reversed—that American Summit was not the owner of the shares, American Summit should now be able to renew its claim that Superior Financial Holdings converted American Summit's shares." Third-Party Pl.'s Mem. at Part III.A.

Neither American Summit nor Third-Party Defendants address whether American Summit's proposed renewal of its June 2001 intentional interference with contractual relationship count is barred by res judicata.

## III. DISCUSSION

### A. Legal Standards

#### 1. Supplemental Jurisdiction

Section 1367(a) of Title 28 of the United States Code provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). But a federal court <u>may</u> decline the exercise of supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

<u>Id.</u> § 1367(c).

### 2. Res Judicata Doctrine

As the United States Court of Appeals for the Eighth Circuit has succinctly noted:

> The binding effect of a former adjudication, often generically termed res judicata, can take one of two forms. Claim preclusion (traditionally termed res judicata or "merger and bar") "'bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.'" Plough v. W. Des Moines Cmty. Sch. Dist., 70 F.3d 512, 517 (8th Cir. 1995) (quoting Smith v. Updegraff, 744 F.2d 1354, 1362 (8th Cir. 1984)). Issue preclusion (or "collateral estoppel") applies to legal or factual issues "actually and necessarily determined," with such a determination becoming "conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 . . . (1979).

W.A. Lang Co. v. Anderberg-Lund Printing Co. (In re Anderberg-Lund Printing Co.), 109 F.3d 1343, 1346 (8th Cir. 1997). Relitigation of a claim is barred if three requirements are met: "(1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." Lane v. Peterson, 899 F.2d 737, 741 (8th Cir. 1990) (citation omitted), cert. denied, 498 U.S. 823 (1990).

### 3. Amending and Supplementing Pleadings

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Moreover, "denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001). Even if the adverse party would suffer some prejudice if the motion to amend were granted, the anticipated prejudice must be balanced against the hardship to the

moving party if the motion is denied. Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981). Ultimately, the decision to grant or not grant leave to amend is entrusted to the sound discretion of the trial court. Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).

"[S]upplemental pleadings, not amended pleadings, are intended to cover matters occurring after the original complaint is filed." United States ex rel. Kinney v. Stoltz, 327 F.3d 671, 673 n.4 (8th Cir. 2003). Federal Rule of Civil Procedure 15(d) provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." A supplemental pleading "is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted" and "ought to be allowed as of course, unless some particular reason for disallowing [it] appears, though the court has the unquestioned right to impose terms upon [its] allowance when fairness appears to require them." New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 28-29 (4th Cir. 1963), cert. denied, 376 U.S. 963 (1964).

**B. Issues Before the Court**

There being no dispute between the parties as to the proposed Count I concerning the ultra vires issue remanded by the Eight Circuit, the Court will allow Count I as proposed. There are three remaining issues before the Court, that can be posed as questions: (1) Should the Court retain jurisdiction over the proposed claims? (2) Are the proposed conversion (Count II) and intentional

interference with contractual relations (Count III) claims barred by the doctrine of res judicata? (3) Should the supplemental allegations and breach of common law fiduciary duty (Count IV) and statutory oppression (Count V) claims be allowed? Each question is taken up and answered below.

**1. Subject Matter Jurisdiction**

As an initial matter, the Court reaffirms that it properly assumed jurisdiction over this lawsuit and decided the matters presented to it pursuant to federal question and supplemental jurisdiction. To the extent that federal question jurisdiction no longer exists, the Court may retain the remaining matters pursuant its supplemental jurisdiction authority. Given the Eighth Circuit's remand order, the complex factual history of the dispute, the extent of resources committed by the parties and the Court, the Court finds that the interests of judicial economy and fairness would be best served by retaining jurisdiction. See Grain Land Coop v. Kar Kim Farms, Inc., 199 F.3d 983, 993 (8th Cir. 1999) (finding that district court did not abuse its discretion in retaining state law claims after dismissal of federal claims "in light of the considerable resources invested by the court in arriving at its summary judgment ruling"); Murray v. Wal-Mart, Inc., 874 F.2d 555, 558 (8th Cir. 1989) ("Substantial investment of judicial time and resources, as well as other factors such as convenience, fairness, and comity, may justify the exercise of jurisdiction over the state claims after the federal claim has been dismissed from the suit."). Therefore, the Court will retain jurisdiction over the remaining claims in this matter.

**2. Res Judicata as to Conversion and Intentional Interference with Contractual Relationship Counts**

While the parties only identify one count of the proposed Amended Third-Party Complaint that has been previously ruled on by the district court (Count II: Conversion), there is one other such count

(Count III: Intentional Interference with Contractual Relationship). The res judicata effect of Judge Frank's ruling on each count merits separate consideration.

**a. Proposed Conversion Count**

The district court disposed of the conversion count because Judge Frank found that American Summit's security interest in the Superior stock collateral evaporated when American Summit refused Beardmore's tender offer. (Doc. No. 96 at 15-16, 20.) Therefore, the Court concluded that neither Beardmore nor Third-Party Defendants could have converted the stock. (Id.) The district court found that if the Texas absolute bar rule were applied, American Summit would not be able to pursue a judgment on the remaining amount of the note with Beardmore because it had foreclosed on some of the note's collateral—the IFS shares. (Id. at 12-13.) The district court, however, rejected the application of the absolute bar rule and found that American Summit could seek a judgment on the remaining amount of the note if it could rebut the presumption that the IFS stock was equivalent to the remaining amount due on the note. (Id. at 13.)

Despite American Summit's blanket notice of appeal (Doc. No. 99), it never expressly presented the conversion or intentional interference with contractual claims to the Eighth Circuit. Nor did American Summit dispute Third-Party Defendant's contention to the Eighth Circuit that "American Summit's only remaining claims on appeal are its . . . third-party claims (Counts I-III) challenging Superior's alleged ultra vires cancellation of Certificate 33 and issuance of Certificates 42-45 to Third-Party Defendants." See Eighth Circuit Brief of Appellees Briggs and Morgan, Tantalon Group, Thomas P. Kell, Todd R. Haugan, Richard Lefcowitz in 02-3370, at 8 (emphasis in original). The conversion and ultra vires counts, however, are closely intertwined and by addressing the ultra vires

question both the appellant American Summit and the Eighth Circuit implicitly addressed the conversion count. In contrast to the district court, the Eighth Circuit, in addressing the ultra vires claim, applied the absolute bar rule and determined that its application in this case resulted in American Summit retaining both the IFS shares and the Superior shares in complete satisfaction of the note. Beardmore, 351 F.3d at 357. Thus, unlike the district court, the Eighth Circuit held American Summit owns the Superior shares. Id. at 359. In doing so, the Eighth Circuit reversed the legal underpinning upon which the district court rested its rejection of American Summit's conversion claim. Given the above, the Court finds that American Summit did sufficiently appeal the conversion count and the Eighth Circuit remand order also requires reconsideration of the conversion count in light of its determination that American Summit owns the Superior shares. Thus, res judicata does not bar the conversion count proposed by American Summit. The Court finds that its inclusion in the proposed Amended Third-Party Complaint is appropriate.

**b. Proposed Intentional Interference with Contractual Relationship Count**

While Judge Frank discussed other grounds for disposal of the count, one of the grounds upon which he disposed of the intentional interference with a contractual relationship count was that "Third-Party Plaintiffs ma[d]e no response to Third-Party Defendants' motion" for summary judgment and thus, "fail[ed] to meet their burden to establish a *prima facie* case." (Doc. No. 96 at 20.) In response to a motion for summary judgment, "the non-moving party" must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317,

324 (1986) (quoting Fed. R. Civ. P. 56(c) & (e)). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). Because American Summit failed to respond to Third-Party Defendants' summary judgment motion on the intentional interference with a contractual relationship count, the subsequent remand order by the Eighth Circuit does not save the count. The count is barred by the doctrine of res judicata.

### 3. **Breach of Common Law Fiduciary Duty and Statutory Oppression Counts**

The Court will allow American Summits's proposed supplementation of its factual allegations. The Court will also allow the breach of common law fiduciary duty and statutory oppression counts because doing so will avoid the cost, delay and waste of separate actions which would occur if the proposed counts were not allowed and will afford the Court an opportunity to award more complete relief in this matter.

Therefore, based upon the foregoing,

**IT IS HEREBY ORDERED that:**

1. Third-Party Plaintiff American Summit Financial Holdings, LLC's Motion for Leave to File and Serve Amended and Supplemental Third Party Complaint (Doc. Nos. 114 and 117) is **GRANTED in part and DENIED in part** as follows:

    a. The proposed Count III is barred by the doctrine of res judicata.

    b. The remaining proposed supplementation and amendments may be included in an Amended Third-Party Complaint.

2. Third-Party Plaintiff shall file its Amended Third-Party Complaint within 5 days of this Order and Third-Party Defendants shall respond as set forth in Federal Rule of Civil Procedure 15(a).

DATED: April 14, 2005

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge