UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

John R. Beardmore, Kathrine A. Beardmore and Terry Hedstrom,

Plaintiffs,

v.

American Summit Financial Holdings, LLC, and Duckson, Carlson, Bassinger & Mitchell, LLC,

Defendants/Third Party Plaintiffs,

v.

Thomas P. Kell, Todd R. Haugan, and Richard Lefcowitz,

Third Party Defendants.

Court File No.: 01-CV-948 (PFS/JJG)

**JOINT ANSWER AND COUNTERCLAIM OF THOMAS P. KELL AND TODD R. HAUGAN TO SECOND AMENDED THIRD PARTY COMPLAINT OF AMERICAN SUMMIT FINANCIAL HOLDINGS, LLC**

---

Third-Party Defendants Thomas P. Kell ("Kell") and Todd R. Haugan ("Haugan") provide this Answer to the Second Amended Third Party Complaint of American Summit (the "Complaint"). Except as admitted, qualified, or otherwise explained herein, Haugan and Kell deny each and every allegation in the Complaint.

## PARTIES

1. Haugan and Kell are without sufficient information to form an opinion as to the truth or falsity of Paragraph 1 of the Complaint.

2. In response to Paragraph 2 of the Complaint, Haugan and Kell, based upon information and belief, understand that Duckson, Carlson, Bassinger & Mitchell, L.L.C. ("DC") was a limited liability company engaged in the practice of law and doing business in Minneapolis, Minnesota. Upon information and belief, DC is no longer in business.

3. Haugan and Kell admit Paragraph 3 of the Complaint, except that Superior Financial Holding Corporation ("Superior") is not actively engaged in any business and is located in Wayzata, Minnesota.

4. In response to Paragraph 4 of the Complaint, Haugan and Kell affirmatively allege that, at all relevant times, Haugan was not an officer of Superior or The Lake Bank. Haugan and Kell admit the remaining allegations of Paragraph 4.

5. Haugan and Kell admit Paragraph 5 of the Complaint, except Haugan and Kell deny that Kell is a Minnesota resident.

6. Haugan and Kell admit Paragraph 6 of the Complaint, except Haugan and Kell deny that Richard Lefcowitz ("Lefcowitz"), based upon the December 8, 2003 opinion of the 8th Circuit Court of Appeals, was ever a shareholder of Superior.

## JURISDICTION AND VENUE

7. Haugan and Kell deny that this Court has subject matter jurisdiction over this matter.

8. Haugan and Kell admit that if this Court has jurisdiction, the State of Minnesota is the proper venue.

## FACTS

9. With respect to paragraph 9 of the Complaint, Haugan and Kell admit that John Beardmore ("Beardmore") acquired at least 3,000,000 shares of common stock of Superior in September 1999 and affirmatively allege that he may have acquired more than 3,000,000 shares at said time.

10. In response to Paragraph 10 of the Complaint, Haugan and Kell respond that, upon information and belief, in early September 1999, 300,000 shares of common stock in Superior were acquired by DC, Todd Duckson or a combination of the two.

11. With respect to Paragraph 11 of the Complaint, Haugan and Kell respectfully submit that the so-called "Investment Agreement" speaks for itself and said Defendants affirmatively allege that none of them have any involvement with any agreement which may or may not have been reached between Superior, DC, Beardmore, and Mark A. Smith. Haugan and Kell affirmatively allege that said agreement was never approved by the Board of Directors of Superior nor any other shareholders.

12. Haugan and Kell affirmatively state that with respect to Paragraph 12 of the Complaint, the so-called Investment Agreement speaks for itself.

13. With respect to Paragraph 13 of the Complaint, Haugan and Kell respectfully submit that the terms of the so-called Investment Agreement and "Put Option" speak for themselves.

14. Haugan and Kell generally admit the allegations set forth in Paragraph 14 of the Complaint but affirmatively allege they were uninvolved in this transaction and further affirmatively allege that the terms of the subject Note speaks for itself.

15. With respect to Paragraph 15 of the Complaint, Haugan and Kell respectfully submit that the terms of any Pledge Agreements speak for themselves. Haugan and Kell have no involvement with the subject Pledge Agreement.

16. Haugan and Kell have no knowledge with respect to the established market, or lack thereof, of IFS common stock referenced in Paragraph 16 of the Complaint. Haugan and Kell do not know what the term "no established market" means and are unable to admit or deny the allegations of Paragraph 16 with respect to Superior common stock. Haugan and Kell acknowledge that Superior common stock is not publicly traded.

17. In response to Paragraph 17 of the Complaint, Haugan and Kell admit that Superior owned 100% of the issued and outstanding common stock of The Lake Bank if the term "at the time" is intended to mean the period of September 1999. Haugan and Kell deny that The Lake Bank was a federally chartered bank.

18. Haugan and Kell are without sufficient knowledge or information to admit or deny the allegations of Paragraph 18 of the Complaint.

19. Haugan and Kell are without sufficient knowledge or information to form an opinion as to the truth or falsity of the allegations set forth in Paragraph 19 of the Complaint.

20. With respect to Paragraph 20 of the Complaint, the Option Agreement speaks for itself.

21. With respect to Paragraph 21 of the Complaint, Haugan and Kell acknowledge that Beardmore sold 1,000,000 shares of common stock in Superior to an ESOP of The Lake Bank. Based upon information and belief, Haugan and Kell acknowledge that Superior issued Stock Certificate No. 33 to John Beardmore which represented Beardmore's ownership of 1,500,000 shares of common stock in Superior. Haugan and Kell have no direct information as to what Beardmore did with his stock certificate.

22. Haugan and Kell admit Paragraph 22 of the Complaint.

23. Haugan and Kell have no direct information to form an opinion as to the truth or falsity of Paragraph 23 of the Complaint but acknowledge that, based upon information and belief, Founders gave Beardmore notice of its intent to sell 1,500,000 shares of common stock in Superior owned by Beardmore.

24. Haugan and Kell are without sufficient knowledge to form an opinion as to the truth or falsity of the allegations of Paragraph 24 of the Complaint.

25. With respect to Paragraph 25 of the Complaint, Haugan and Kell admit that Beardmore and DC entered into an Option Agreement, the terms of which speak for themselves.

26. Haugan and Kell do not know what Beardmore did with his IFS shares and therefore deny Paragraph 26 of the Complaint.

27. With respect to paragraph 27 of the Complaint, Haugan and Kell are without sufficient information to form an opinion as to when and on what occasions Founders may have notified Beardmore of its default under the Note.

28. With respect to paragraph 28 of the Complaint, Haugan and Kell acknowledge that Founders claims to have provided Beardmore a notice of sale on February 16, 2001. Haugan and Kell are without sufficient information to form an opinion as to whether this notice was actually given to or received by Beardmore.

29. Haugan and Kell are without sufficient information to form an opinion as to the truth or falsity of Paragraph 29 of the Complaint.

30. Haugan and Kell are without sufficient information to form an opinion as to the truth or falsity of Paragraph 30 of the Complaint.

31. Haugan and Kell do not have sufficient information to form an opinion as to the truth or falsity of Paragraph 31 of the Complaint.

32. Haugan and Kell do not have sufficient information to form an opinion as to the truth or falsity of Paragraph 32 of the Complaint.

33. Haugan and Kell do not have sufficient information to form an opinion as to the truth or falsity of Paragraph 33 of the Complaint.

34. Haugan and Kell do not have sufficient information to form an opinion as to the truth or falsity of Paragraph 34 of the Complaint.

35. Haugan and Kell do not have sufficient information to form an opinion as to the truth or falsity of Paragraph 35 of the Complaint. Haugan and Kell affirmatively allege that American Summit could exercise no control over the subject Superior shares until its ownership of the subject shares was approved by the Federal Reserve Bank.

36. Haugan and Kell do not have sufficient information to form an opinion as to the truth or falsity of Paragraph 36 of the Complaint.

37. In response to Paragraph 37 of the Complaint, Haugan and Kell acknowledge that American Summit purports to have submitted a draft application to the Federal Reserve Bank but affirmatively allege that this application was never approved. Haugan and Kell deny that Haugan was an officer of Superior at relevant times.

38. Haugan and Kell are without sufficient information to form an opinion as to the truth or falsity of Paragraph 38 of the Complaint.

39. Haugan and Kell are without sufficient information to form an opinion as to the truth or falsity of Paragraph 39 of the Complaint.

40. Haugan and Kell are without sufficient information to form an opinion as to the truth or falsity of Paragraph 40 of the Complaint.

41. Haugan and Kell are without knowledge to form an opinion as to the truth or falsity of Paragraph 41 of the Complaint.

42. Haugan and Kell are without knowledge to form an opinion as to the truth or falsity of Paragraph 42 of the Complaint.

43. Haugan and Kell are without knowledge to form an opinion as to the truth or falsity of Paragraph 43 of the Complaint.

44. Haugan and Kell are without knowledge to form an opinion as to the truth or falsity of Paragraph 44 of the Complaint.

45. Haugan and Kell are without knowledge to form an opinion as to the truth or falsity of Paragraph 45 of the Complaint.

46. Haugan and Kell are without knowledge to form an opinion as to the truth or falsity of Paragraph 46 of the Complaint.

47. Haugan and Kell are without knowledge to form an opinion as to the truth or falsity of Paragraph 47 of the Complaint.

48. Haugan and Kell are without knowledge to form an opinion as to the truth or falsity of Paragraph 48 of the Complaint.

49. With respect to Paragraph 49 of the Complaint, Haugan and Kell are without knowledge as to what Beardmore did or did not do with respect to the alleged assignment of options to American Summit. Haugan and Kell affirmatively allege, however, that it is their understanding that Beardmore attempted to satisfy the note in full.

50. Haugan and Kell deny Paragraph 50 of the Complaint and affirmatively allege that, in fact, the option price was never paid, and has been previously ruled herein, the subject option was never properly exercised.

51. Haugan and Kell admit Paragraph 51 of the Complaint.

52. In response to Paragraph 52 of the Complaint, Haugan and Kell admit that American Summit refused to release Certificate No. 33 to Beardmore.

53. In response to Paragraph 53 of the Complaint, Haugan and Kell state that the stock purchase agreements speak for themselves.

54. With respect to Paragraph 54 of the Complaint, Haugan and Kell respectfully submit that the terms of the subject purchase agreements speak for themselves.

55. Haugan and Kell are without sufficient knowledge or information to admit or deny the allegations of Paragraph 55 of the Complaint.

56. In response to Paragraph 56 of the Complaint, Haugan and Kell acknowledge that Kell, on behalf of Superior, canceled Certificate No. 33 pursuant to the demand of Beardmore under the authority referenced in Paragraph 56 of the Complaint. Haugan and Kell are without information to form an opinion as to whether Beardmore notified Founders, DC, or American Summit, or whether he had any obligation to do so.

57. Haugan and Kell admit Paragraph 57 of the Complaint.

58. Haugan and Kell admit that there was a general understanding that Founders had a Promissory Note and Security Agreement pursuant to which its Note with Beardmore was ostensibly secured with 1,500,000 shares of Beardmore's common stock in Superior, as alleged in Paragraph 58 of the Complaint. Haugan and Kell do not have sufficient information to form an opinion as to whether the alleged security is "validly perfected" and affirmatively allege Beardmore made one or more good faith tender offers to American Summit, which offers were refused.

59. With respect to Paragraph 59 of the Complaint, Haugan and Kell deny that Kell executed any agreement pursuant to which Superior agreed to indemnify anyone. Kell, on behalf of Superior, executed an agreement pursuant to which Beardmore agreed to indemnify Superior. Haugan and Kell further allege that board approval is not necessary for Kell to execute executive functions and tasks as the Chief Executive officer of Superior.

60. With respect to Paragraph 60 of the Complaint, Haugan and Kell admit that Superior canceled Certificate No. 33 and affirmatively that they did so at the demand of Beardmore which was supported by an opinion of Briggs and Morgan by the opinion of

outside legal counsel as was authorized by Minn. Stat. § 336.8-403, 336.8-404, 336.8-405, and 336.8-406.

61. Haugan and Kell deny Paragraph 61 of the Complaint.

62. Haugan and Kell admit Paragraph 62 of the Complaint.

63. Haugan and Kell admit Paragraph 63 of the Complaint but affirmatively allege that Kell did so on behalf of Superior.

64. Haugan and Kell admit Paragraph 64 of the Complaint.

65. With respect to Paragraph 65 of the Complaint, Haugan and Kell are without information to form an opinion as to when American Summit and DC became aware of the fact that Certificate No. 33 had been replaced.

66. Haugan and Kell are without information to form an opinion as to the truth or falsity of the allegations set forth in Paragraph 66 of the Complaint.

67. Haugan and Kell are without information to form an opinion as to the truth or falsity of the allegations set forth in Paragraph 67 of the Complaint.

68. Haugan and Kell admit Paragraph 68 of the Complaint.

69. Haugan and Kell admit Paragraph 69 of the Complaint.

70. Haugan and Kell deny Paragraph 70 of the Complaint.

71. In response to Paragraph 71 of the Complaint, Haugan and Kell admit that the Directors of Superior agreed to and subsequently sold the 1,200 shares of stock in The Lake Bank on or about March 14, 2004, but affirmatively allege that they did so as required under one or more consent decrees issued by the Office of the Controller of the Currency of the United States Treasury.

72. In response to Paragraph 72 of the Complaint, Haugan and Kell acknowledge that they notified the shareholders of Superior that their interest in The Lake Bank had been sold and that no cash was received (due to the fact that the shares of The Lake Bank were encumbered to secure a promissory note, the principal balance of which was in excess of $2,500,000.00). Contrary to the allegations contained in Paragraph 72, Haugan and Kell allege that there is no "true and correct copy of the "Stock Purchase Agreement" attached to the Complaint as Exhibit A".

73. In response to Paragraph 73 of the Complaint, Haugan and Kell admit that the primary asset of Superior was The Lake Bank and that asset is no longer owned by Superior. Superior does maintain an interest in several distressed assets, the ultimate value of which is as yet undetermined. The value of American Summit's Superior shares is currently unknown.

74. Haugan and Kell acknowledge that Paragraph 74 of the Complaint purports to reallege Paragraphs 1 – 73 of the Complaint as more thoroughly set forth therein, which allegation needs no response from Haugan and Kell.

75. Haugan and Kell admit Paragraph 75 of the Complaint.

76. In response to Paragraph 76 of the Complaint, Haugan and Kell affirmatively allege that their purchase of the separate shares were based upon Beardmore's representation that he had full authority to sell the subject shares, and upon the legal opinion of outside counsel, that the claim of American Summit did not restrict Beardmore's right to sell the subject shares.

77. In response to Paragraph 77 of the Complaint, Haugan and Kell admit knowing that American Summit claimed an interest in the stock, but affirmatively allege that they relied upon the opinion of Briggs & Morgan that said claim was invalid, and affirmatively allege that at no time relevant herein had American Summit ever received approval by the Federal Reserve Bank to own the subject stock. In addition Haugan and Kell affirmatively allege that the subject options were never properly exercised.

78. Paragraph 78 of the Complaint states a legal conclusion to which no response is required.

79. In response to Paragraph 79 of the Complaint, Haugan and Kell acknowledge American Summit's request and respectfully submit that said paragraph requires no response.

80. Haugan and Kell admit that Paragraph 80 realleges Paragraphs 1 - 79 and state that no response is due.

81. Haugan and Kell deny the allegations contained in Paragraph 81 of the Complaint herein and respectfully submit that said Defendants relied upon the legal opinion of outside legal counsel at all times herein with respect to all actions taken. American Summit's rights and interests in the subject 1,500,000 shares were immediately recognized by Superior upon issuance of this Court's December 8, 2003 Order.

82. Haugan and Kell deny Paragraph 82 of the Complaint herein and affirmatively allege that American Summit has previously pled an action against Haugan and Kell for conversion (in Count 5 of its June 19, 2001 Third-Party Complaint), which claim was denied by the Court herein and is now barred by the doctrine of res judicata.

83. In response to Paragraph 83 of the Complaint, Haugan and Kell deny that American Summit is entitled to judgment for conversion or for any other reason.

84. Haugan and Kell acknowledge that Paragraph 84 of the Complaint realleges the references and allegations contained in 1 – 83 of the Complaint.

85. Haugan and Kell deny Paragraph 85 of the Complaint herein and affirmatively allege that any duty to American Summit began at such time as American Summit was legally authorized and approved to own the subject shares of stock in Superior.

86. Haugan and Kell deny Paragraph 86 of the Complaint herein. Haugan and Kell affirmatively allege that American Summit was never entitled to participate in the operation and governance of Superior as it was not, at all times relevant herein, approved by the Federal Reserve Bank to own the subject stock.

87. Haugan and Kell deny Paragraph 87 of the Complaint herein and affirmatively allege that they properly exercised their business judgment as it relates to operating the subject bank as Directors and, with respect to Kell, as an officer.

88. Haugan and Kell deny Paragraph 88 of the Complaint herein.

89. Haugan and Kell acknowledge that Paragraph 89 purports to reallege Paragraphs 1 - 88 of the Complaint herein, which paragraph requires no response.

90. Haugan and Kell admit Paragraph 90 of the Complaint herein, except they affirmatively allege that American Summit could not legally become the owner of the Superior shares until such time as it was proved that it owned such shares by the Federal Reserve Bank.

91. Haugan and Kell deny Paragraph 91 of the Complaint.

92. Haugan and Kell deny Paragraph 92 of the Complaint.

93. Haugan and Kell deny Paragraph 93 of the Complaint herein and affirmatively allege that American Summit could not be legally recognized as a shareholder of Superior until such time as approved to be a shareholder by the Federal Reserve Bank, and Haugan and Kell further affirmatively allege that the very documents pursuant to which American Summit obtained its security interest in the subject shares (from Founders) specifically stated that they would exercise no control over the subject shares until such time as approved to do so by the Federal Reserve Bank.

94. Haugan and Kell deny Paragraph 94 of the Complaint herein and affirmatively allege that the reasonable and fair market value of the subject shares on May 4, 2001 were dramatically less than that paid by Defendants.

**AFFIRMATIVE DEFENSES**

95. The Court lacks subject matter jurisdiction over the claims stated in the third party supplemental and amended complaint.

96. The amended and supplemental third-party complaint fails to state a claim for which relief can be granted.

97. Haugan and Kell allege that Count 2 of the Complaint (conversion) has been previously litigated between the parties and is barred by the doctrine of res judicata.

98. Third-party plaintiff has no standing to seek damages based upon its purported ownership of shares of Superior Financial Holding Corporation, given the fact

that at no time relevant herein was Plaintiff authorized by the Federal Reserve Board, pursuant to Sec. 3(a)(1) of the Bank Holding Act of 1956 to own such shares.

99. Haugan and Kell affirmatively allege any damages sustained by third-party plaintiff were a result of their own acts, omissions or conduct or the conduct of third parties.

100. Haugan and Kell affirmatively allege that the third-party plaintiff's claims are barred in whole or in part by the doctrines of estoppel, unclean hands, breach, and waiver.

101. Third-party plaintiff has failed to mitigate its damages.

102. Third-party plaintiff has failed to satisfy a condition precedent.

**COUNTERCLAIM**

For their Counterclaim against John R. Beardmore ("Beardmore"), Haugan and Kell state and allege as follows:

1. Haugan and Kell incorporate by reference their Answer to the Amended and Supplemental Third-Party Complaint of American Summit as stated above.

2. Beardmore is, on information and belief, a resident of Minnesota.

3. At all relevant times, Tantalon Group, Inc. ("Tantalon") was a Wisconsin corporation having its principal place of business in Minong, Wisconsin.

4. In or around September 1999, Beardmore acquired at least 3,000,000 shares of Superior common stock.

5. In mid 2001, Beardmore began negotiating with Haugan and Kell to sell a portion of his Superior shares.

6. Subsequently, on or about May 2, 2001, Beardmore entered into three stock purchase agreements to sell an aggregate of 1,500,000 shares of the Superior common stock for a total purchase price of $1,900,000.

7. In one stock purchase agreement, Beardmore agreed to sell 157,895 shares of Superior common stock to Haugan at $1.26667 per share, for a total purchase price of $200,000 ("Haugan SPA").

8. In another SPA, Beardmore agreed to sell 342,605 shares of Superior common stock to Tantalon at $1.26667 per share, for a total purchase price of $433,965 ("Tantalon SPA"). At all relevant times, Kell was president of Tantalon.

9. In order to induce Haugan and Kell to enter into an SPA, Beardmore made certain written and oral representations concerning his ability to transfer the shares.

10. In Section 2.1 of both the Haugan SPA and Tantalon SPA, Beardmore represents and warrants that:

> [Beardmore] has full power and authority to execute, deliver and perform this Agreement and no consent or approval of, giving of notice to, registration with or taking of any other action in respect of, any state, federal or other governmental authority or agency or any other third party is required with respect to the execution, delivery or performance of this Agreement by [Beardmore], except that [Beardmore] is required to notify Duckson, Carlson, Bassinger & Mitchell, LLC ("Duckson") of any bona fide offer made by a third party for the purchase of a majority of the shares of stock of Superior Financial Holding Corporation owned by [Beardmore] pursuant to the terms of that certain investment agreement dated as of September 13, 1999, by and between Duckson, [Beardmore] and Mark A. Smith (the "Investment Agreement").

11. In Section 2.2 of the Haugan SPA and Tantalon SPA, Beardmore further warrants and represents that:

> [Beardmore] is not subject to any charter, mortgage, lien, lease, agreement, contract, instrument, law, rule, regulation, order, judgment or decree, or any other restriction of any kind or character, which would prevent the consummation of the transactions contemplated by this Agreement.

12. In both the Haugan SPA and Tantalon SPA, Beardmore further represented and warranted that he had "good legal and beneficial title to the Shares free and clear of all liens, charges, restrictions, pledges, claims, rights of third parties and other encumbrances (collectively "Liens") other than the option rights" previously granted to DC. (SPA § 2.3.)

13. In both the Haugan SPA and Tantalon SPA, Beardmore also represents and warrants that he "has full legal right, power and authority to sell, assign and transfer the Shares, and the delivery of the Shares to Buyer . . . will transfer to Buyer good legal and beneficial title thereto, free and clear of all Liens, other than the [DC] Option Rights." (SPA § 2.5.)

14. In Both the Haugan SPA and Tantalon SPA, Beardmore represents that "[o]n May 1, 2001, [Beardmore] sent a notice of termination under the Option Agreement to Duckson. Accordingly, the Option Rights will terminate on May 31, 2001." (SPA § 2.6.)

15. In reasonable reliance on Beardmore's representations, Kell and Haugan both entered into an SPA with Beardmore and paid the purchase price for the subject Superior common stock.

**COUNT I**
**BREACH OF CONTRACT**

16. Haugan and Kell restate and reallege the allegations in the foregoing paragraphs of the Counterclaim as if restated herein.

17. Haugan and Kell entered into legally enforceable contracts with Beardmore on or about May 2, 2001. The agreements are entitled “Stock Purchase Agreement.”

18. To the extent that Beardmore’s transfer of the Superior shares to Haugan and Kell is found improper, Beardmore breached the Stock Purchase Agreements.

19. As a direct and proximate result of Beardmore’s breaches of the SPAs, Haugan and Kell are entitled to damages in an amount to be proven at trial in addition to their attorneys' fees, costs, disbursements incurred herein and pre and post judgment interest as allowed by law.

**COUNT II**
**NEGLIGENT MISREPRESENTATION**

20. Haugan and Kell restate and reallege the allegations in the foregoing paragraphs of the Counterclaim as if restated herein.

21. Beardmore’s representations, as described above, were false statements of material fact.

22. Beardmore knew or should have known that the representations were false, or Beardmore made these representations without taking reasonable steps to determine whether they were false.

23. Beardmore expected Haugan and Kell to rely on his representations and Haugan and Kell did reasonably rely.

24. Beardmore's false representations were the direct and proximate cause of harm to Haugan and Kell.

25. As a result of Breadmore's false representations, Haugan and Kell are entitled to damages in an amount to be proven at trial in addition to their attorneys' fees, costs, disbursements incurred herein and pre and post judgment interest as allowed by law.

WHEREFORE, Haugan and Kell request judgment as follows:

1. Dismiss American Summit's Complaint with prejudice;

2. Award damages against American Summit and Beardmore and in favor of Haugan and Kell in an amount to be proven at trial;

3. Award Haugan and Kell attorneys' fees, costs and disbursements incurred herein;

4. Award Haugan and Kell pre and post judgment interest;

5. Award other just and equitable relief as appropriate.

**ANTHONY OSTLUND & BAER, P.A.**

Dated: August 29, 2006

By: *_/s/ Shawn C.E. Rauckman_*
Joseph W. Anthony (#2872)
Shawn C.E. Rauckman (#341824)
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 349-6969

**ATTORNEYS FOR THIRD PARTY DEFENDANTS TODD R. HAUGAN AND THOMAS P. KELL**